DECISION AND JOURNAL ENTRY
{¶ 1} Defendant, William T. Davis, appeals from the decision of the Summit County Court of Common Pleas which found him guilty of felonious assault and failure to provide for a functionally impaired person. We affirm.
 {¶ 2} On April 21, 2003, Defendant was indicted with his wife, Justine Davis ("Wife"), for felonious assault, in violation of R.C. 2903.11(A)(1), a second degree felony, and failure to provide for his step-son Edgar Vannoy ("Vannoy"), a functionally impaired person, resulting in serious physical harm, in violation of R.C. 2903.16(A), a fourth degree felony. A joint trial ensued in October 2003. Following the State's case in chief, Defendant moved for Crim.R. 29 acquittal. The court denied the motion. The defense did not put on any evidence and the jury found Defendant and Wife guilty on both counts. The trial court merged the convictions for purposes of sentencing and sentenced Defendant to the maximum term of eight years for the felonious assault conviction. Defendant timely appealed raising four assignments of error. For ease of discussion we will discuss assignment of error two last.
 ASSIGNMENT OF ERROR I
"[Defendant] was improperly charged and convicted under the general provision for felonious assault, where the Revised Code contains a more specific provision providing for a lesser degree offense for the same alleged conduct."
 {¶ 3} In his first assignment of error, Defendant argues that he may not be charged under both the felonious assault and failure to provide statutes. Specifically, Defendant alleges one may not be charged with a general offense, felonious assault, where a specific lesser offense, failure to provide, applies to the same conduct. Defendant admits that he did not raise this argument at trial, but asserts that this error amounts to plain error. We find Defendant's contentions meritless.
 {¶ 4} As Defendant failed to object to this error at the trial level, we may only review it for plain error. See State v.Hanshaw, 9th Dist. No. 21530, 2003-Ohio-7179, at ¶ 17. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Plain error exists where the outcome of the trial would clearly have been different but for the existence of the error. State v. Sanders (May 17, 2000), 9th Dist. No. 19783, at 3.
 {¶ 5} Principles of statutory construction require that specific statutory provisions prevail over general legislation.State v. Volpe (1988), 38 Ohio St.3d 191, 193. R.C. 1.51 states that:
"If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."
 {¶ 6} Where the statutes are irreconcilable, for instance where they provide different penalties for the same act, and the special provision was adopted later than the general provision, the prosecutor may only charge a defendant under the special provision. Volpe, 38 Ohio St.3d at 193; State v. Chippendale
(1990), 52 Ohio St.3d 118, paragraph three of the syllabus. However, "R.C. 1.51 comes into play only when a general and a special provision constitute allied offenses of similar import[.]" Chippendale, 52 Ohio St.3d 120. To determine whether or not offenses are allied offenses of similar import, this court compares the elements of each offense in the abstract. State v.Rance, 85 Ohio St.3d 632, paragraph one of the syllabus, 1999-Ohio-291.[1]
 {¶ 7} In State v. Davis, 9th Dist. No. 21794, 2004-Ohio-3246, Wife's prior appeal to this Court, we determined that felonious assault, in violation of R.C. 2903.11(A), and failure to provide for a functionally impaired individual, in violation of R.C. 2903.16(A), both require proof of different elements, and are not irreconcilable under R.C. 1.51. Id. at ¶ 7-9. Accordingly, Defendant could properly be charged with both felonious assault and failure to provide for a functionally impaired individual. The State's choice to charge Defendant under both statutes, therefore, does not amount to plain error.
 {¶ 8} We overrule Defendant's first assignment of error.
 ASSIGNMENT OF ERROR III
"[Defendant's] convictions were against the manifest weight of the evidence."
 {¶ 9} In his third assignment of error, Defendant asserts that his convictions were against the manifest weight of the evidence. Specifically, he states that "the jury lost its way in finding that there was `serious physical harm' caused to [Vannoy] * * * [because Vannoy] suffered only from `moderate' dehydration and * * * he was in the normal range [under the chemical malnutrition tests]." Defendant argues the jury only found that serious physical harm existed due to an erroneous jury instruction, as presented in his fourth assignment of error. We disagree.
 {¶ 10} When a defendant maintains that his conviction is against the manifest weight of the evidence:
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
An appellate court should only invoke this power in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of a defendant. Id.
 {¶ 11} Defendant in this case was convicted of felonious assault, in violation of R.C. 2903.11(A)(1), and failure to provide for a functionally impaired individual, in violation of R.C. 2903.16(A). To convict Defendant of felonious assault the State must have proven that he "knowingly * * * [c]aus[ed] serious physical harm" to Vannoy either via an act or a failure to act where the natural and direct consequence of that act or failure directly produced the serious physical harm. R.C.2903.11(A)(1). For failure to provide for a functionally impaired individual, the State must show that (1) Vannoy was a functionally impaired individual, (2) Defendant was a caretaker for Vannoy, (3) Defendant knowingly failed to provide Vannoy with treatment, care, goods, or services necessary to maintain his health or safety, and (4) this failure resulted in serious physical harm to Vannoy. See R.C. 2903.16(A). Defendant has limited his manifest weight claim to the "serious physical harm" element of both convictions, and has not challenged the other elements under those statutes.[2]
 {¶ 12} The evidence at trial showed that, in 1998, while attending a government funded day school for children and adults with an IQ under 50, Vannoy was capable of going to the bathroom by himself and eating alone. He could also communicate using some sign language. Two employees who testified implied that Vannoy was happy and healthy during his many years at Weaver School.
 {¶ 13} Wife and Defendant removed Vannoy from the school in 1998, stating that they were moving to Colorado. While the family did not move, Vannoy was never re-enrolled in a day program, though this would not have personally cost Defendant and Wife any money. Defendant and Wife also did not take Vannoy for regular visits to a doctor or dentist, regardless of the fact that the expenses would have been completely covered by Medicaid.
 {¶ 14} Approximately five years after Vannoy was removed from Weaver School, Jesse Littleton, who had been living with Defendant, Wife, and Vannoy for a few weeks, called the police to report alleged abuse of Vannoy. The police responded to Defendant and Wife's home on April 3, 2003. They knocked on the front door of the home, and Wife answered, eventually inviting them inside. The officers noted that the house smelled horribly of feces, urine, and garbage. They spent turns outside on the porch in order to get some fresh air.
 {¶ 15} Wife brought Vannoy down from his upstairs bedroom for the officers to see. Both indicated that he looked like a prisoner of war: very thin, as though he had not eaten enough, and dirty. They tried to communicate with Vannoy, but he merely hid behind Wife and would not in any way respond to the officers. The officers called paramedics to the scene to check on Vannoy's health. Following a Tartar test, the paramedics determined that Vannoy was dehydrated, and transported him to the hospital. Wife rode in the ambulance with Vannoy while Defendant followed in the family car.
 {¶ 16} Vannoy was admitted to the hospital for two days to combat "life-threatening" dehydration and malnourishment. Records indicate that Vannoy was so emaciated that his bones stuck out, and that his stomach was indented. At 5'5'', he weighed a mere 92 pounds and was described as "severe[ly] underweight." He was also anemic, had lacerations on his legs, and dermatitis from an allergic reaction on his arms. The hospital used an IV to hydrate him with two liters of saline, and replenished the essential nutrients he was lacking.
 {¶ 17} Debra Smith ("Smith"), an investigator for the Summit County Board of Mental Retardation and Developmental Disabilities, met with Vannoy at the hospital. "[She] was mortified when [she] first saw him. He was very, very, very thin. Appeared to be very malnourished * * * almost like somebody you would see walking out of a POW camp." She took pictures of Vannoy, including the marks on his back, the protrusion of his rib cage, the indentation in his stomach, and the abrasions and lesions on his legs and toes. She recalled that he had arrived at the hospital in urine and feces soaked clothing.
 {¶ 18} On April 10, 2003, Dr. Islam Ibrahim met with Vannoy for the first time. In that first week, Vannoy had gained 12 pounds.[3] Dr. Ibrahim prescribed Ensure to help Vannoy gain weight, and cleared out wax impaction in Vannoy's ears. He insisted that an individual should be able to recognize severe dehydration, though maybe not mild dehydration. He also stated that Vannoy's condition was consistent with someone who was not given enough to eat and drink every day, and that the dehydration could not have been caused by the flu which Vannoy had a week prior to his hospital admittance. Left untreated, Dr. Ibrahim indicated that Vannoy's dehydration and malnourishment could have led to death, kidney and liver problems, and changes in Vannoy's mental status. He felt that the hospital was prudent in admitting Vannoy.
 {¶ 19} Vannoy was immediately placed in the care of a certified foster parent, Lucinda Hill ("Hill"). "When he came, he was very weak, and he had sores on him. He was very thin." She recalled that Vannoy had sores over much of his body, and that he constantly scratched them. He could walk unaided, but he walked with a "stumbly" gait that was very weak. Hill also said that Vannoy could not go to the bathroom by himself. She had to wipe for him in order to prevent him from making a mess.
 {¶ 20} At the time of trial, Vannoy had gained 46 pounds so that, at 138 pounds, he fell comfortably within the recommended weigh range stated by Dr. Ibrahim. Vannoy could also no longer wear the same clothing, as he gained three sizes.
 {¶ 21} Given the evidence at trial, we cannot say that the jury clearly lost its way and committed a miscarriage of justice. The State offered evidence tending to show that Vannoy suffered serious physical harm due to the actions of Defendant and Wife. While some evidence indicated that perhaps the harm suffered was not "serious," we will not overturn the verdict on a manifest weight challenge simply because the jury chose to believe evidence offered by the prosecution. State v. Merryman, 9th Dist. No. 02CA008109, 2003-Ohio-4528, at ¶ 28, quoting State v.Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757. Accordingly, we overrule Defendant's third assignment of error.
 ASSIGNMENT OF ERROR IV
"The trial court erred in its jury instruction regarding the element of `serious physical harm.'"
 {¶ 22} In his fourth assignment of error, Defendant argues that the trial court erred by giving an erroneous jury instruction regarding "serious physical harm." Defendant argues that the definition given by the trial court incorrectly included "any condition of such gravity as to require hospitalization[,]" and that hospitalization alone is inadequate in and of itself to show serious physical harm. Defendant did not object to the jury instruction below, but alleges that the defect was plain error. We disagree.
 {¶ 23} As noted above, plain errors and defects affecting substantial rights may be addressed by this Court even when they were not brought to the attention of the trial court. Crim.R. 52(B). Crim.R. 52(B) places three limitations on the decision of a reviewing court to correct an error despite the absence of a timely objection at trial. State v. Barnes, 94 Ohio St.3d 21,27, 2002-Ohio-68. There must first be an error or deviation from a legal rule. Id., citing State v. Hill, 92 Ohio St.3d 191,200, 2001-Ohio-141. Second, the error must be plain — it must "be an `obvious' defect in the trial proceedings." Barnes,94 Ohio St.3d at 27, citing State v. Sanders, 92 Ohio St.3d 245, 257,2001-Ohio-189. Finally, the error must have affected substantial rights to the point that the court's error affected the outcome of the trial. Barnes, 94 Ohio St.3d at 27.
 {¶ 24} R.C. 2901.01(A)(5) defines serious physical harm as:
"(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
"(b) Any physical harm that carries a substantial risk of death:
"(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity.
"(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
"(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 25} The trial court instructed the jury virtually word for word from the statute with the exception of R.C.2901.01(A)(5)(a). As to that portion of the statute, the court stated that serious physical harm included "any condition of such gravity as to require hospitalization[,]" and failed to incorporate the language regarding "mental illness or condition[.]"
 {¶ 26} The evidence at trial showed that Vannoy was hospitalized for two days with life threatening dehydration and malnourishment. At 5'5", he weighed only 92 pounds and was emaciated. Multiple witnesses testified that Vannoy looked like a prisoner of war, was dirty, and smelled of urine and feces. Following the removal of Vannoy from the care of Defendant and Wife, his condition improved dramatically. Given the evidence at trial, we cannot say that the outcome of Defendant's trial would clearly have been different had the court used the exact wording of R.C. 2901.01(A)(5) to define serious physical harm. The jury could also have found serious physical harm existed under other portions of the statute. Plain error does not lie in this case. We, therefore, overrule Defendant's fourth assignment of error.
 ASSIGNMENT OF ERROR II
"[Defendant] was denied the effective assistance of counsel."
 {¶ 27} In his second assignment of error, Defendant contends that he was denied the effective assistance of counsel because defense counsel did not object to (1) the felonious assault charge when the failure to provide statute specifically provided for a lesser degree of offense for the same conduct and (2) the erroneous jury instruction regarding "serious physical harm." In other words, Defendant basically re-alleges his first and fourth assignments of error in the context of ineffective assistance of counsel.
 {¶ 28} In evaluating an ineffective assistance of counsel claim, this court employs the two step process described inStrickland v. Washington (1984), 466 U.S. 668, 687,80 L.Ed.2d 674. First, the court must determine whether there was a "substantial violation of any of defense counsel's essential duties to his client." State v. Bradley (1989),42 Ohio St.3d 136, 141; State v. Lytle (1976), 48 Ohio St.2d 391, 396. Licensed attorneys are presumed competent in Ohio. Lytle,48 Ohio St.2d at 397. Defendant must overcome the "presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Strickland, 466 U.S. at 689, quoting Michel v. Louisiana (1955), 350 U.S. 91, 101.
 {¶ 29} Second, the court must determine if prejudice resulted to Defendant from counsel's ineffectiveness. Bradley,42 Ohio St.3d at 141-42. Prejudice exists where the trial result would have been different but for the alleged deficiencies of counsel. Id. at paragraph three of the syllabus. Defendant bears the burden of proof, and must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 48-49, quoting Strickland,466 U.S. at 687.
 {¶ 30} This court need not address both elements in any particular order — if we find there was no prejudice to Defendant by defense counsel's acts, we need not address whether defense counsel's acts were actually deficient. See Bradley,42 Ohio St.3d at 143. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice * * * that course should be followed." Id.
 {¶ 31} As noted in Wife's prior appeal on the same issue:
"[W]e find that no prejudice resulted from defense counsel's failure to object to the felonious assault charge. Because that statute and the failure to provide statute are separate charges, with separate elements of proof, which are not irreconcilable, the State could properly charge Defendant under both statutes."Davis, at ¶ 14. See, also, Volpe, 38 Ohio St.3d at 193;Chippendale, 52 Ohio St.3d 118, paragraph three of the syllabus.
 {¶ 32} Also, given our determination as to Defendant's fourth assignment of error, we cannot find that defense counsel's failure to object to the "serious physical harm" instruction rendered the trial unfair or its result unreliable. Thus, Defendant has not met his burden of proof as to his ineffective assistance of counsel claim. See Colon, at ¶ 48-49, citingStrickland, 466 U.S. at 687. Accordingly, we overrule Defendant's second assignment of error.
 {¶ 33} We overrule Defendant's assignments of error and affirm the decision of the Summit County Court of Common Pleas.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, P.J., and Boyle, J. Concur.
[1] As noted in State v. Davis, 9th Dist. No. 21794, 2004-Ohio-3246, at n. 1, the Ohio Supreme Court formerly required courts to consider the specific facts of the case to determine whether or not the offenses in question were allied offenses of similar import. State v. Chippendale, 52 Ohio St.3d at 121.State v. Rance, 85 Ohio St.3d 632, 1999-Ohio-291, however, changed that analysis, and presently requires this Court to consider the statutory elements in the abstract. Rance,85 Ohio St.3d 632, at paragraph one of the syllabus. If the offenses are not allied offenses of similar import under Rance, they are not irreconcilable under R.C. 1.51. See State v. Hendrickson, 2nd Dist. No. 19045, 2003-Ohio-611, at ¶ 18; State v. Waldron
(Sept. 1, 2000), 11th Dist. No. 99-A-0031; State v. Rivers
(July 27, 1999), 10th Dist. No. 98AP-1322.
[2] For a more extensive recitation of the facts in this case, not limited to this element, see Davis, at ¶ 28-55.
[3] Vannoy weighed 92 pounds at admittance to the hospital and 104 pounds when Dr. Ibrahim met with him on April 10, 2003. Dr. Ibrahim indicated Vannoy should ideally weigh between 117 and 149 pounds.