DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant, Bruce Chisolm, appeals from his conviction for aggravated burglary, aggravated murder, murder and felonious assault. We affirm.
 {¶ 2} On August 19, 2004, and September 2, 2004, the Lorain County Grand Jury indicted Defendant on nine separate counts: (1) aggravated burglary, in violation of R.C. 2911.11(A)(1); (2) aggravated burglary, in violation of R.C. 2911.11(A)(2); (3) aggravated murder, in violation of R.C. 2903.01(B); (4) aggravated robbery, in violation of R.C. 2911.01(A)(1); (5) aggravated robbery, in violation of R.C. 2911.11(A)(3); (6) robbery, in violation of 2911.02(A)(1); (7) tampering with evidence, in violation of R.C. 2921.12(A); (8) murder, in violation of R.C. 2903.02(B); and (9) felonious assault, in violation of R.C. 2903.11(A)(1)and (2). A jury found Defendant guilty of counts one, two, three, eight, and nine, all with firearm specifications. Defendant timely appealed his conviction on each of the counts for which he was convicted, raising three assignments of error for review.
 Assignment of Error I
"Defendant was denied his right to a fair trial and his right to due process of law when the prosecutor's misconduct prejudiced the defense by making him show his tattoo to the jury."
 {¶ 3} Defendant asserts that the prosecutor's request that Defendant roll up his sleeve to show the jury the tattoo on his arm was prosecutorial misconduct and denied him a fair trial and his due process rights. Defendant asserts that allowing the jury to view Defendant's tattoo could have caused the jury to infer that Defendant was a member of a gang and thus was so highly prejudicial that plain error occurred. We disagree. Defendant also asserts ineffective assistance of counsel based upon the showing of the tattoo to the jury, which will be addressed in our discussion of Assignment of Error II.
 {¶ 4} "When a defendant fails to object to alleged prosecutorial misconduct, he waives all but plain error." Statev. Burgos, 9th Dist. No. 05CA008808, 2006-Ohio-4305, at ¶ 38, citing State v. Smith, 97 Ohio St.3d 367, 2002-Ohio-6659, at ¶ 45. Defense counsel failed to object and, in fact, permitted the Defendant to show his tattoo to the jury at the prosecutor's request. Appellant has waived any claim but that of plain error. Id.
 {¶ 5} "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v.Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. In order for this court to apply Crim.R. 52(B), it must be clear that the outcome of the trial would have been different but for the alleged error. See State v. Lane (1995),108 Ohio App.3d 477, 482, 671 N.E.2d 272.
 {¶ 6} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The Supreme Court has repeatedly admonished that this exception to the general rule is to be invoked reluctantly. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Long, paragraph three of the syllabus. In order for this court to apply Crim.R. 52(B), it must be clear that the outcome of the trial would have been different but for the alleged error. See Lane, at 482.
 {¶ 7} In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, the Court must determine if the request by the prosecutor to view the Defendant's tattoo was improper, and, if so, whether that request and viewing actually prejudiced the substantial rights of the Defendant. State v.Overholt, 9th Dist. No. 02CA0108-M, 2003-Ohio-3500 at ¶ 47. Defendant must demonstrate that there is a reasonable probability, that, but for the prosecutor's misconduct, the result of the proceeding would have been different. Id.
 {¶ 8} Defendant's sole support for this assignment of error is an argument that the tattoo may have allowed the jury to infer that Defendant was a member of a gang known as the Latin Kings. However, it was Defendant who put the tattoo at issue during police interviews when he voluntarily showed police his crown tattoo, which is similar to a Latin King symbol, and later testified at trial that he lied during his interview with officers because of fear of retribution from the co-defendants who were members of the Latin Kings.
 {¶ 9} On appeal, Defendant has failed to connect his allegation of a prejudicial inference to any probability of a different result had the jury not been allowed to see the tattoo. Moreover, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A). Accordingly, "[w]here constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." State v.Williams (1983), 6 Ohio St.3d 281, paragraph six of the syllabus. The volume, nature and extent of the remaining evidence presented at trial constitutes proof of Defendant's guilt beyond a reasonable doubt, regardless of the tattoo evidence.
 {¶ 10} We find that Defendant has failed in his burden and we decline to find plain error as a result of the prosecution's request or the jury's view of Defendant's tattoo. Defendant's first assignment of error is overruled.
 Assignment of Error II
"Defendant was denied effective assistance of counsel."
 {¶ 11} Defendant asserts that he was denied effective assistance of counsel because Defendant's trial counsel did not (1) seek a change of venue; (2) re-direct Defendant after cross-examination by the prosecutor; (3) object to the State requiring him to show his tattoo to the jury; and (4) object to an erroneous jury charge.
 {¶ 12} The Sixth Amendment to the United States Constitution guarantees a criminal defendant the effective assistance of counsel. McMann v. Richardson (1970), 397 U.S. 759, 771. Courts employ a two-step process to determine whether the right to effective assistance of counsel has been violated:
"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington (1984),466 U.S. 668, 687.
An attorney properly licensed in Ohio is presumed competent.State v. Lott (1990), 51 Ohio St.3d 160, 174. The defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate or that counsel's action might be sound trial strategy. State v. Smith (1985),17 Ohio St.3d 98, 100. "Ultimately, the reviewing court must decide whether, in light of all the circumstances, the challenged act or omission fell outside the wide range of professionally competent assistance." State v. DeNardis (Dec. 29, 1993), 9th Dist. No. 2245, at *2, citing Strickland, 466 U.S. at 690. In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus.
1. Change of Venue
 {¶ 13} Defendant asserts ineffective assistance of counsel in failing to request a change of venue due to pretrial publicity that Defendant and co-defendants were heroin addicts.
 {¶ 14} Defense counsel was permitted to reasonably decide, as a matter of trial strategy, to conduct the trial in Lorain County instead of requesting a change of venue. State v. Bryan,101 Ohio St.3d 272, 2004-Ohio-971 at ¶ 155-56, citing State v.White (1998), 82 Ohio St.3d 16, 24, 693 N.E.2d 772; State v.Mason (1998), 82 Ohio St.3d 144, 157, 694 N.E.2d 932. Further, a change of venue is not automatically granted because of pretrial publicity. "Any decision to change venue rests largely within the discretion of the trial court" Id. at ¶ 157, citing State v.Maurer (1984), 15 Ohio St.3d 239, 251, 473 N.E.2d 768. "[A] careful and searching voir dire provides the best test of whether prejudicial pretrial publicity has prevented obtaining a fair and impartial jury from the locality." Id., quoting State v.Landrum (1990), 53 Ohio St.3d 107, 117, 559 N.E.2d 710, quotingState v. Bayless (1976), 48 Ohio St.2d 73, 98, 357 N.E.2d 1035. "[A] defendant claiming that pretrial publicity has denied him a fair trial must show that one or more jurors were actually biased." Id., quoting State v. Gross, 97 Ohio St.3d 121,2002-Ohio-5524 at ¶ 29.
 {¶ 15} Here, the court questioned jurors about pretrial publicity as follows:
"Court: Ladies and gentlemen, this case has had media attention, and I suspect it's going to have media attention again. Is there anyone, from what I have said this morning, that has read or heard anything about this case, or who recalls reading or hearing anything about this case? Ms. Ewald, I don't want to know what you heard, but I do want to know, what's the source?
"Juror: The Chronicle.
"Court: And based on what you may have read in the Chronicle, have you formed an opinion?
"Juror: Frankly, I don't remember exactly the case, I just know must have read something about it.
"Court: If during the course of this trial something comes up and you say, "Oh, yeah, I did read about that," can you set that aside and separate it out? Your verdict has to be based on evidence that comes to you in this courtroom, and not on any third-party source.
"Juror: Yes.
"Court: Would that be the same for all of you? If during the course of this trial something, you know, brings back a memory, and you say, "Oh, yeah, I did read about that," would you set it aside? Does everybody understand that reporters aren't privy to everything? Sometimes reporters are more interested in getting the scoop than getting the facts. Sometimes what they report is not accurate. You have to make your decision on what comes to you in this courtroom. Will all of you do that?" T., 43-44.
 {¶ 16} The trial court also took effective steps to protect Defendant's rights. It told the jurors to "avoid" media related to the case and to refrain from talking to anyone about the case at the beginning of the case and at the end of each day's testimony. The Court's admonitions were as follows:
"Court: Ladies and gentlemen, it's now a few minutes after 4:00, and we're not going to be able to start and finish another witness. I'm going to remind you of the admonitions that I've already given you. In addition to those admonitions, I'm going to add two more. There have been reporters in the courtroom today, and I'm guessing that both the Chronicle and the Journal will cover this case. You are to avoid any newspaper, radio, or, heaven forbid there should be television, television coverage on this case. Your decision must be based on what comes to you in this courtroom, and not any third-party source. If you want, ask friends and relatives to save the papers for you, but you are to avoid any news coverage." T., 219.
 {¶ 17} One juror acknowledged that she had read a newspaper about the case and could not remember what he read. Each of the empanelled jurors questioned about pretrial publicity stated that he or she either had not formed an opinion about the Defendant's guilt or could put aside such an opinion and render a verdict based on the law and evidence presented. There is no evidence a juror had actually been biased. Thus, Defendant's charge as to counsel's failure to move for a change of venue did not affect the outcome of Defendant's trial and thus, does not rise to the level of ineffective assistance of counsel. See Strickland, at 687.
2. Redirect of Defendant After Cross-Examination.
 {¶ 18} Defendant asserts ineffective assistance of counsel in failing to conduct a redirect examination after the prosecutor finished his cross examination of Defendant.
 {¶ 19} As noted above, in evaluating defense counsel's performance, the courts initially presume that duly licensed counsel performs competently. Smith, 17 Ohio St.3d at 100. Courts accord deference to counsel's strategic choices, from counsel's perspective then without the benefit of hindsight.Strickland, at 689-90. An attorney's decision as to whether or not to object at certain times during trial is presumptively considered a trial tactic or strategy. State v. Downing, 9th Dist. No. 22012, 2004-Ohio-5952, at ¶ 23, citing State v. Fisk,
9th Dist. No. 21196, 2003-Ohio-3149, at ¶ 9; State v. Phillips
(1995), 74 Ohio St.3d 72, 85. Moreover, an attorney's decisions as to whether or not to question a witness and the extent of such questioning are tactical matters. Downing at ¶ 28, citingState v. Likosar, 9th Dist. No. 03CA0063-M, 2004-Ohio-114, at ¶ 26. Speculation is insufficient to establish the requisite prejudice. Downing at ¶ 27, citing State v. Stalnaker, 9th Dist. No. 21731, 2004-Ohio-1236, at ¶ 8-10.
 {¶ 20} Here, the conduct Defendant challenges is a strategic choice that does not demonstrate ineffective assistance. Counsel could have decided that redirect examination of Defendant would be detrimental to Defendant's case. While others, including Defendant, may think differently, counsel's tactical decision is within the bounds of reason and worthy of deference. Defendant has not established that defense counsel's failure to conduct a redirect examination affected the outcome of the trial. Thus, Defendant's charge as to failure to conduct a redirect examination of Defendant does not rise to the level of ineffective assistance of counsel.
3. Jury View of Tattoo.
 {¶ 21} Defendant asserts ineffective assistance of counsel in allowing, without objection, the jury to view his tattoo as its similarity to the symbol of a gang known as the Latin Kings could allow the jury to infer that Defendant is a member of such gang.
 {¶ 22} As noted above, an attorney's decision as to whether or not to object at certain times during trial is presumptively considered a trial tactic or strategy. Downing at ¶ 23. Moreover, as discussed above, the tattoo was relevant to the proceedings as the similarity of his tattoo to the crown symbol of the Latin Kings, a gang of which the co-defendants were allegedly members, was offered as an explanation and/or a defense to Defendant's conduct. The tattoo was voluntarily made an issue by Defendant during police interviews. Thus, the tattoo was properly admitted, and there is no evidence before us to demonstrate that counsel's failure to object affected the outcome of Defendant's trial, especially given the volume and nature of the other evidence demonstrating Defendant's guilt beyond a reasonable doubt. See, e.g., State v. Myers, 97 Ohio St.3d 335,2002-Ohio-6658, 780 N.E.2d 186 at ¶ 159. Defendant's charge as to failure to object to the prosecution's request for the jury to view Defendant's tattoo does not rise to the level of ineffective assistance of counsel.
4. Erroneous Jury Instruction.
 {¶ 23} It is undisputed that the original jury instruction was incorrect and that defense counsel did not object to the erroneous jury instruction when given. It is also undisputed that the jury instruction was corrected and given to the jury before it rendered its verdict. A complete discussion of the actual jury instruction and its correction is set forth below in our discussion of Assignment of Error III. In the face of these undisputed facts, Defendant must demonstrate that he was prejudiced by his attorney's failure to object to the erroneous jury instruction. It is Defendant that bears the burden of proof to show that defense counsel's errors were so serious as to deprive the defendant of a fair trial. State v. Davis, 9th Dist. No. 21762, 2004-Ohio-3704 at ¶ 29, citing State v. Colon,
9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 48-49, quotingStrickland at 687.
 {¶ 24} Although Defendant makes a cursory statement that the result would have been different had the correct jury instruction been given at the beginning of deliberations, he provides no argument or facts in support of this proposition. We find no prejudice in that the jury instruction was corrected prior to a verdict being given. Defendant has not met his burden and defense counsel's failure to object to the temporary erroneous jury instruction does not rise to the level of ineffective assistance of counsel. We overrule Defendant's second assignment of error.
 Assignment of Error III
"The Defendant was denied a fair trial due to the jury being given an erroneous jury charge and deliberating upon same."
 {¶ 25} Defendant asserts that he was denied a fair trial when the court improperly instructed the jury that to find Defendant guilty of aggravated murder, it must find that the Defendant "knowingly" aided and abetted a co-defendant in committing the offense of aggravated murder. It is undisputed that the word "knowingly" should have been "purposely." Defendant did not object to the original jury instruction when given.
 {¶ 26} Appellant's failure to object to the jury instructions waives all challenges except plain error. Burgos, at ¶ 27, citing, State v. Skatzes, 104 Ohio St.3d 195, 2004-Ohio-6391 at ¶ 52, citing State v. Underwood (1983), 3 Ohio St.3d 12, syllabus. Defendant did not object to these instructions, as required by Crim.R. 30(A). Therefore, we can only take notice of the error if it rises to the level of plain error. Furthermore, "[a] single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." State v. Price (1979), 60 Ohio St.2d 136, paragraph four of the syllabus.
 {¶ 27} As discussed above, to demonstrate plain error, it must be clear that the outcome of the trial would have been different but for the alleged error. Lane, at 482. Here, the record indicates that during deliberations, the trial court corrected its erroneous instruction substituting the word "purposely" for "knowingly," brought the correction to the attention of the jury and pointed the jury's attention to the definition section of the jury instructions as to the meaning of the word "purposely." Under the circumstances, a corrective instruction during deliberations was inconsequential and does not amount to plain error sufficient to defeat the waiver rule. See,Smith at ¶ 19. We overruled Defendant's third assignment of error.
Judgment Affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Whitmore, J., Moore, J., concur.