[Cite as *State v. Berry*, 2017-Ohio-1490.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO. 5-16-16

      v.

CLINTON BERRY,                        O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2015CR00246

**Judgment Affirmed**

Date of Decision:    April 24, 2017

**APPEARANCES:**

    *Tim A. Dugan* for Appellant

    *Phillip A. Riegle* for Appellee

**PRESTON, P.J.**

{**¶1**} Defendant-appellant, Clinton Douglas Berry ("Berry"), appeals the May 19, 2016 judgment entry of the Hancock County Court of Common Pleas. For the reasons that follow, we affirm.

{**¶2**} The testimony and exhibits at trial indicate that Berry entered the victim's home on the night of March 13, 2015 without a key and without permission to be in the home. (Apr. 11-14, 2016 Tr., Vol. III, at 440). He put his hand over the victim's mouth to stop her from screaming, pulled her off the couch, put handcuffs on her, and pushed her upstairs. (*Id.* at 441-43). Once the two reached the victim's son's room, Berry laid the victim on the bed and used a second set of handcuffs to bind her to the bedrail. (*Id.* at 444).

{**¶3**} Berry then applied lubricant to his fingers and used them to penetrate the victim's vagina. (*Id.* at 445). After some time passed, he did so again. (*Id.* at 446).

{**¶4**} On September 22, 2015, Berry was indicted on Counts One and Two of rape in violation of R.C. 2907.02(A)(2), a first-degree felony, Count Three of aggravated burglary in violation of R.C. 2911.11(A)(1), a first-degree felony, and Count Four of kidnapping in violation of R.C. 2905.01(A)(4), a first-degree felony. (Doc. No. 1). The final count of the indictment includes a specification under R.C.

2941.147 alleging that Berry committed the offense of kidnapping with a sexual motivation. (*Id.*).

{¶5} Berry appeared for arraignment on September 30, 2015 and pled not guilty to the counts and specification in the indictment. (Doc. No. 7).

{¶6} A jury trial took place from April 11 to April 14, 2016. The jury found Berry guilty as to all counts of the indictment and the specification. (Apr. 11-14, 2016 Tr., Vol. VI at 1015-1017). The trial court held a sentencing hearing and a sex-offender-registration hearing on May 12, 2016. (May 12, 2016 Tr. at 3-7). The trial court filed its judgement entry of conviction and sentence on May 19, 2016. (Doc No. 67). The trial court classified Berry as a Tier III sex offender and sentenced him to ten years in prison as to Count One, ten years in prison as to Count Two, six years in prison as to Count Three, and ten years in prison as to Count Four, ordering that Berry serve the sentences consecutively for a total prison term of 36 years. (*Id.*).

{¶7} Berry filed his notice of appeal on June 10, 2016. (Doc. No. 74). In his appeal, Berry raises two assignments of error for our review.

**Assignment of Error No. I**

**Appellant's Convictions for Rape, Aggravated Burglary, And Kidnapping Are Against The Manifest Weight Of The Evidence.**

{¶8} In his first assignment of error, Berry argues that his convictions for rape, aggravated burglary, and kidnapping are against the manifest weight of the

evidence. Essentially, Berry argues that the jury should not have deemed the testimony of the victim credible because the physical evidence and photos of the scene simply do not comport with what one would expect if the victim's testimony were accurate. (Appellant's Brief at 15-16). Somewhat more specifically, he argues that his convictions for rape, aggravated burglary, and kidnapping are against the manifest weight of the evidence because the jury lost its way in finding force, trespassing, and restraint, respectively. (Appellant's Brief at 5).

{¶9} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's

judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

{¶10} We will address Berry's claims in the order in which he raises them, discussing the rape charge first, then aggravated burglary, and finally kidnapping. More specifically, we will address whether the jury lost its way in finding force as to Counts One and Two, trespassing as to Count Three, and restraint as to Count Four.

{¶11} First, we will review whether Berry's conviction for rape is against the manifest weight of the evidence. On appeal, Berry argues that his rape conviction is against the manifest weight of the evidence because the jury lost its way in concluding that Berry compelled the victim to submit to sexual conduct by force.

{¶12} The criminal offense of rape is codified in R.C. 2907.02, which, as relevant here, provides, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "Force" means "any violence, compulsion, or constraint physically exerted by any means upon or against a person

-5-

or a thing." R.C. 2901.01(A)(1). "A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit." *State v. Schaim*, 65 Ohio St.3d 51, 55 (1992). "A threat of force can be inferred from the circumstances surrounding sexual conduct." *Id.*

{¶13} Berry argues that his rape convictions are against the manifest weight of the evidence because the jury lost its way in finding that he acted with force. Specifically, Berry argues that the jury lost its way in crediting the victim's testimony because, despite her testifying that she was in handcuffs for a long period of time during the encounter, pictures of her wrists do not indicate the sort of injuries that such restraints would produce, and the metal bed frame did not have the sort of marks that metal handcuffs would have produced. (Appellant's Brief at 15). Berry further argues that the jury lost its way in finding him guilty of rape because the State produced no residue of lubricant, did not produce any handcuffs, and did not produce the vibrator or the bag from which these various items allegedly came. (*Id.* at 16). Berry further argues that the reports showed no evidence of Berry's DNA from inside the vaginal canal of the victim, despite the fact that the victim claimed Berry penetrated her with his fingers. *Id.* Berry also notes that, despite the victim's assertions that he would not get water for her when she requested it, a photograph of the scene depicts several water bottles on a night stand. (*Id.* at 15).

{¶14} In his own direct testimony, Berry averred that, after arriving at the victim's home and being let in, the two began a consensual encounter on the victim's couch, and they then moved upstairs. (*See* Apr. 11-14, 2016 Tr., Vol. V at 842-843). Berry further stated that the victim verbally consented to sex. (*Id.* at 846). As to handcuffs, Berry testified that, though he had seen a set of toy handcuffs months before because his son had them, he had not seen those handcuffs since that time and had not purchased a pair of handcuffs himself. (*Id.* at 863-865).

{¶15} The State presented testimony from many witnesses at trial. We will discuss only the testimony relevant to the elements Berry challenges on appeal. At trial, the victim testified that she left her television on intending to fall asleep on March 13, 2015. (Apr. 11-14, 2016 Tr., Vol. III at 438). Her next memory was awakening to a sound behind her and turning to see Berry coming into her room. (*Id.* at 439). She testified that Berry then put his hand over her mouth and told her to stop screaming, and he then put handcuffs on her. (*Id.* at 441). Berry then pulled the victim off the couch and pushed her toward the stairs and then upstairs. (*Id.* at 442-43). According to the victim, Berry told her in a forceful tone that they needed to talk, and she was going to listen. (*Id.* at 443).

{¶16} The victim went on to testify that, once she and Berry reached her son's room, he laid her down on her son's bed, produced a second set of handcuffs, and handcuffed her to the rail of the bed. (*Id.* at 444). She said that he then removed

-7-

her underwear, lubricated his fingers, and used them to penetrate her vagina. (*Id.* at 445). After penetrating her with his fingers, he produced a vibrator and penetrated her with that as well. (*Id.* at 450). According to the victim, Berry's conduct began to cause physical pain for her. (*Id.* at 454). Despite her requests, he refused to get her water, giving her alcohol instead. (*Id.* at 456). The victim asserted that, upon going to the restroom, she noted that her wrists were sore, and her vagina was irritated. (*Id.* at 460). The victim went on to say that some while later, Berry used his fingers to penetrate her vagina a second time. (*Id.* at 466).

{¶17} Upon Berry's departure, the victim immediately went to the Bluffton Hospital. (Apr. 11-14, 2016 Tr. Vol. III at 471). She then had to go to the Blanchard Valley Hospital because the Bluffton Hospital did not have the necessary personnel to examine her. (*Id.* at 472-73).

{¶18} Sexual Assault Nurse Examiner ("SANE") nurse Lisa Dillinger ("Dillinger") examined the victim upon her arrival at Blanchard Valley Hospital. (Apr. 11-14, 2016 Tr., Vol. IV at 546). Dillinger read the victim's statement from the morning of her examination on the record, and it contained the same details up to and including Berry's first penetration of her vagina with his fingers. (*Id.* at 557-58); (State's Ex. 14). Dillinger documented seven external injuries during her examination of the victim. (*Id.* at 561). The first of the seven external injuries was on her right wrist; the injury was a bruise visible with the naked eye. (*Id.* at 564).

The second injury she noted was also on the right wrist, and it was another bruise visible to the naked eye. (*Id.* at 564). The third injury, also on the right wrist, was a tender bruise visible with the naked eye (*Id.* at 565). The fourth injury Dillinger observed was another wrist injury visible with the naked eye. (*Id.* at 566). The fifth injury she documented was on the victim's right upper neck; Dillinger observed redness visible with her naked eye. (*Id.* at 566). The sixth external injury was on the victim's left forearm; it consisted of bruising and tenderness detectable only with an alternate light source. (*Id.* at 565-66). The seventh external injury was on the right wrist above the victim's thumb—a bruise visible with the aid of an alternative light source. (*Id.* at 567). Dillinger deemed all seven injuries consistent with the history the victim reported to her, and she specifically testified that the injuries were consistent with the use of handcuffs. (*Id.* at 568-69). The State produced photographs depicting the various injuries noted above. (State's Exs. 16, 17, 18, 19, 20, 21, 22, 23, 24).

{¶19} Detective Lyle Harvitt ("Harvitt") of the Hancock County Sheriff's Office testified at trial. He investigated this case, and he spoke with the victim in the course of that investigation. (Apr. 11-14, 2016 Tr. Vol. IV at 636). Harvitt testified that, when he spoke with the victim, he noted bruises on her arms that she said had come from the handcuffs that had been used to restrain her. (*Id.* at 636). Harvitt also testified that, having reviewed the report Dillinger prepared, he believed

the information he received from the victim matched the information from Dillinger's report. (*Id.* at 637).

{¶20} Weighing the evidence above, we conclude that the jury did not lose its way in concluding that Berry compelled the victim to submit to sexual conduct by force, and his convictions for rape are not against the manifest weight of the evidence. Evidence supporting Berry's conviction consists of testimony and exhibits from multiple witnesses, both lay and expert, including Dillinger, who specifically testified that her observations of the victim and her injuries were consistent with the history the victim gave. (Apr. 11-14, 2016 Tr., Vol. IV, at 568-69). Berry offers no evidence that such is not the case; he argues basically that there is less evidence of his guilt than one might expect, and he asserts in his own self-serving testimony that his sexual encounter with the victim was consensual. The jury was entitled to believe the State's witnesses. *State v. Archibald,* 11th Dist. Lake Nos. 2006-L047, 2006-L-207, 2007-Ohio-4966, ¶ 61. Likewise, we conclude that the jury did not clearly lose its way in not giving great credit to Berry's self-serving statement that he and the victim engaged in a consensual sexual encounter. We conclude that the absence of marks on the bedrail and the presence of water bottles on the nightstand are quite minor in comparison to the evidence that Berry compelled the victim to submit to sexual conduct by force. We likewise conclude

that the fact that the duffel bag, vibrator, lubricant, and handcuffs were not in evidence does not clearly outweigh the evidence that Berry raped the victim.

**{¶21}** Second, we will review whether Berry's conviction for aggravated burglary is against the manifest weight of the evidence. On appeal, Berry argues that his aggravated burglary conviction is against the manifest weight of the evidence because the jury lost its way in concluding that Berry trespassed.

**{¶22}** The offense of aggravated burglary is defined in R.C. 2911.11(A)(1), which provides:

> (A) No person, by force, stealth, or deception, shall trespass in an occupied structure * * *, when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply:
>
> > (1) The offender inflicts, or attempts or threatens to inflict physical harm on another.

R.C. 2911.11(A)(1). Trespass occurs when someone knowingly enters the premises of another without privilege to do so. *State v. O'Neal*, 87 Ohio St.3d 402, 408 (2000); R.C. 2911.21(A)(1). R.C. 2901.01(A)(12) defines "privilege" as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12).

**{¶23}** Berry claims that his conviction for aggravated burglary is against the manifest weight of the evidence because the jury lost its way in finding that he

trespassed. Because trespass is the only element Berry challenges, that is the only element we will address.

**{¶24}** The victim testified that Berry had no key to her home. (Apr. 11-14 Tr., Vol. IV, at 420). She further testified that she had locked her door when Berry left with her son. (*Id.* at 436). The victim also said that she did not give Berry permission to be in her home at that time. (*Id.* at 440). She then went on to testify that, despite all this, she did indeed see Berry entering her home late at night. (*Id.* at 439).

**{¶25}** Berry claims that the victim invited him into her home. (*See* Apr. 11-14 Tr., Vol. V, at 836-837). He notes that there was no evidence of forced entry into the home, and he notes that there is no evidence he had a key. (Appellant's Brief at 15). Berry seems to argue, then, that, because there is no indication of forced entry, and because Berry had no key, the victim must have invited him in, and so the jury lost its way in finding that he trespassed. (*See id.*). Even if we were to accept Berry's claims that the victim invited him into her home and that he never forced his way in, the jury would still be justified in finding a trespass if it found that, upon being invited into the victim's home, Berry initiated a criminal offense against the victim. *State v. Stevens*, 3rd Dist. Allen No. 1-14-58, 2016-Ohio-446, ¶ 34 citing *State v. Steffen*, 31 Ohio St.3d 111, 115 (1987). The jury heard extensive testimony from the victim regarding Berry's conduct—specifically, the fact that he

compelled her to engage in sexual conduct by force. As we will soon discuss, the jury heard extensive testimony from the victim in regard to Berry's kidnapping charge as well. Weighing the evidence and the applicable law, we conclude that the jury did not lose its way in finding that Berry trespassed or that any privilege to enter the victim's home, if such a privilege existed, was revoked.

**{¶26}** Third, we will review whether Berry's conviction for kidnapping is against the manifest weight of the evidence. On appeal, Berry argues that his conviction for kidnapping is against the manifest weight of the evidence because the jury lost its way in finding that he restrained the victim. (*See* Appellant's Brief at 5). Specifically, Berry argues that the jury lost its way in crediting the victim's testimony because the handcuffs he allegedly used the night of the incident were not in evidence, and there were no marks on the bedrail indicating that the victim had been handcuffed to the bed. (Appellant's Brief at 15-16).

**{¶27}** The offense of kidnapping is defined in R.C. 2905.01, which provides, in relevant part, "No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o engage in sexual activity * * * with the victim against the victim's will." R.C. 2905.01(A)(4).

**{¶28}** We note that applicable case law has held that the restraint inherent in any use of force generally makes any rape under R.C. 2907.02(A)(2) meet the

-13-

element of restraint as to kidnapping under R.C. 2905.01(A)(4). *See State v. Worth*, 10th Dist. No. 10AP-1125, 2012-Ohio-666, ¶ 64. Even if this were not the case, past decisions have held that restraints similar to those used here weigh in favor of the conclusion that a defendant restrained his victim. *See e.g. State v. Warren*, 4th Dist. No. 02CA29, 2003-Ohio-1196 ¶ 26 (concluding that a kidnapping charge was not against the manifest weight of the evidence where the offender duct-taped his victim's hands and feet together in a way that left marks on the victim where the tape had been). Weighing the evidence and the applicable law above against Berry's claim as to the element of restraint, we conclude that the jury did not lose its way in finding that Berry restrained his victim, and Berry's conviction for kidnapping is not against the manifest weight of the evidence. The jury heard extensive testimony from the victim herself as well as from other witnesses indicating handcuffs were used to restrain the victim. As with the other charges, the jury is permitted to credit that testimony as it sees fit.

{¶29} For the reasons explained above, Berry's first assignment of error is overruled.

## Assignment of Error No. II

### Appellant Received Ineffective Assistance Of Counsel At Trial.

{¶30} In his second assignment of error, Berry argues that his trial counsel was ineffective. Specifically, Berry argues that his trial counsel was ineffective

because he did not question Berry on re-direct examination despite a vigorous cross examination by the State, and he further asserts trial counsel was ineffective because trial counsel did not cross-examine the victim about the substance of her testimony, which was raised on direct examination. (Appellant's Brief at 16-17).

{¶31} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). Prejudice results when "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Bradley*, 42 Ohio St.3d 136, 142, quoting *Strickland* at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*

{¶32} In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland*, 466 U.S. at 689. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally

constitute ineffective assistance. *State v. Frazier*, 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989), citing *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976).

{¶33} We conclude that Berry's trial counsel's decision not to conduct a re-direct examination and Berry's trial counsel's decision not to vigorously cross-examine the victim do not overcome the strong presumption that Berry's trial counsel's decisions fall within the wide range of professional assistance.

{¶34} Berry's argument as to his trial counsel's decision not to question him on re-direct examination is unavailing because "the decision to introduce evidence falls within the realm of trial strategy." *State v. Harrison,* 3rd Dist. Logan No. 8-14-16, 2015-Ohio-1419, ¶ 87. *See also State v. Chisolm*, 9th Dist. Lorain No. 05CA008782, 2006-Ohio-5051, ¶¶ 18-20 (concluding that trial counsel's decision not to conduct a re-direct examination of his client is a trial tactic that does not give rise to an ineffective assistance claim).

{¶35} Berry's argument as to his trial counsel's decision not to vigorously cross-examine the victim is also unavailing because the "scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *Id.* citing *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. As to Berry's trial counsel's decision not to cross-examine

the victim more fully, we note that Berry himself admits that "it is good trial practice not to attack a victim on the witness stand, especially when the crime charged is as emotional as [r]ape." (Appellant's Brief at 17). Berry's trial counsel may well have decided that further cross examination of the victim would simply draw greater attention to her ordeal and thereby bolster the State's case to Berry's detriment. *See State v. Costell*, 3d Dist. Union No. 14-15-11, 2016-Ohio-3386, ¶ 158. Because we conclude that Berry's trial counsel's alleged errors do not satisfy the first element of the *Strickland* analysis, it is unnecessary for us to address whether the second element of *Strickland* is met. *State v. Anaya*, 191 Ohio App.3d 602, 2010-Ohio-6045, ¶ 25 (6th Dist.).

{¶36} For the foregoing reasons, Berry's second assignment of error is overruled.

{¶37} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jlr**