[Cite as *State v. O'Black*, 2010-Ohio-4812.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 1-10-25

    v.

ANGELA O'BLACK,                       O P I N I O N

    DEFENDANT-APPELLANT.


**Appeal from Allen County Common Pleas Court**
**Trial Court No. CR 2008 0096**

**Judgment Affirmed**

**Date of Decision:    October 4, 2010**


**APPEARANCES:**

    *William H. White*  for Appellant

    *Jana E. Emerick*  for Appellee

Case No. 1-10-25

**WILLAMOWSKI, P.J.,**

{¶1} Defendant-Appellant, Angela O'Black ("O'Black"), appeals the judgment of the Allen County Court of Common Pleas finding her guilty of grand theft and failing to deliver an automobile title. O'Black contends that the trial court erred in finding her guilty, claiming that she was not personally responsible for the offenses. For the reasons set forth below, the judgment is affirmed.

{¶2} The charges in this case arose out of two transactions pertaining to the acquisition and resale of a 2004 Ford Explorer. O'Black and Robert Shin ("Shin") were the officers and owners of Land & Sea Leasing & Sales, Inc. ("Land & Sea"), a business that bought, sold, and leased automobiles and other vehicles. O'Black and Shin were not married, but had lived together since approximately 2001 or 2002. When the couple incorporated the business in 2004, O'Black was listed as President and Incorporator, although subsequent documents sometimes listed Shin as the President and O'Black as the Secretary/Treasurer.

{¶3} In June 2007, Luke Ludlow ("Ludlow") spoke to Shin about selling his red Explorer. They agreed that the vehicle would be placed on the lot at Land & Sea and that Ludlow would receive the first $13,000 from the sale of the Explorer. Land & Sea would keep any amount received above this for its profit. A few weeks later, Sherry Harris ("Harris") purchased the Explorer, signing a $12,000 (plus tax) purchase contract, to be paid for by a bank loan, and paying an

additional $1,900 in cash. Both Shin and O'Black knew Ludlow and Harris prior to these transactions.

{¶4} Shin informed Ludlow that the Explorer had been sold and that he had electronically transferred the money to the credit union where Ludlow had an account and the loan on the Explorer. However, the money was never transferred and the loan was not paid off. After nearly six months of discussions, excuses, and efforts to find out what happened to the money, Ludlow reported the vehicle stolen and contacted the police and his insurance company.

{¶5} Meanwhile, Harris took possession of the Explorer in July of 2007, and Harris testified that O'Black told her she would take care of the license plates and transfer. In November of 2007, Harris received a notice regarding the renewal of her license plates and noticed that the license plates had not been transferred to the Explorer and that the Explorer had not been transferred into her name. Harris was given various explanations, but she eventually learned that her bank had never received the title and that Ludlow was still listed as the owner of the Explorer. Harris contacted O'Black repeatedly about the issue. When the matter was still not resolved, Shin finally wrote two checks to reimburse Harris. The checks were no good and Harris reported the matter to the prosecutor's office.

{¶6} On March 13, 2008, the Allen County Grand Jury returned a joint indictment against O'Black and Shin:[1] Count One – grand theft in the amount of $5,000 or more in violation of R.C. 2913.02(A)(1)&(B)(2), a felony of the fourth degree; and Count Two – selling a motor vehicle without a title in violation of R.C. 4505.19(A)(2), a felony of the fifth degree.

{¶7} On May 26, 2009, the trial court held a bench trial and heard testimony from Ludlow, Harris, Harris' husband, and Melody Price ("Price"), an investigator with the Bureau of Motor Vehicles. O'Black testified in her own defense, along with an Allen County Title Department employee, and another car dealer who regularly did business with Shin. After hearing the testimony and reviewing the exhibits, the trial court found O'Black guilty of both counts in the indictment.

{¶8} At the sentencing hearing, the trial court sentenced O'Black to three years of community control for each count, to run concurrently.[2] In addition, O'Black was ordered to pay restitution and perform one hundred hours of

---

[1] Shin was also indicted on additional charges.

[2] The original sentencing hearing was held on July 23, 2009, and O'Black was sentenced to three years of community control. She appealed this judgment. However, on January 25, 2010, that appeal was dismissed by this Court for lack of a final appealable order. See *State v. O'Black*, 3d Dist. No. 1-09-46, 2010-Ohio-192. The trial court's original entry specified only one term of community control and one potential prison term, even though it had found her guilty of both of the counts in the indictment. This is not permitted under Ohio's sentencing statutes. See *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶9 and paragraph two of the syllabus ("Under the Ohio sentencing statutes, the judge lacks the authority to consider the offenses as a group and to impose only an omnibus sentence for the group of offenses"). On March 4, 2010, another sentencing hearing was held and it is from this judgment that O'Black now appeals.

community service. O'Black was informed that if she violated the terms of community control, a specific prison term of two years (one year on each count, to run consecutively) could be imposed.

{¶9} O'Black now appeals this judgment, raising the following assignments of error for our review:

### First Assignment of Error

**The trial court committed error when it entered a finding of guilty as to the personal liability of Defendant/Appellant under criminal law, proof beyond a reasonable doubt.**

### Second Assignment of Error

**It is error for the court to find the Appellant guilty based upon her corporate relationship.**

### Third Assignment of Error

**The trial court committed error when it entered a finding of guilty of ORC 2913.01(A)(1) [&] (B)(2) and ORC 4305.19(A)(2) as to the Defendant/Appellant O'Black.**

{¶10} In her three assignments of error, which this Court shall address collectively, O'Black essentially asserts that the trial court erred in finding her guilty. O'Black argues that she was not personally involved in the criminal transactions and that it was Shin who primarily ran the business and was solely culpable. O'Black maintains that she worked as a registered nurse and that her involvement in Land & Sea's business was minimal. Therefore, she believes that she should not be held responsible for Shin's criminal actions. Although not

exactly styled or phrased as such, O'Black's arguments are basically claims that her convictions were not supported by sufficient evidence and/or that the convictions were against the manifest weight of the evidence.

{¶11} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence submitted at trial, if believed, could reasonably support a finding of guilt beyond a reasonable doubt. See *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541, 546 (stating, "sufficiency is the test of adequacy"); *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503. A verdict will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484, 2001-Ohio-4, 739 N.E.2d 749; *Jenks* at 273. This test raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717

{¶12} Unlike sufficiency of the evidence, the question of manifest weight of the evidence does not view the evidence in a light most favorable to the prosecution. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial to support one side of the issue rather than the other." *State v. Thompkins*, 78 Ohio St.3d at 387. A new trial

should be granted only in the exceptional case in which the evidence weighs heavily against conviction. Id. Generally, the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine; however, when reviewing a manifest weight challenge, the appellate court sits as the "thirteenth juror." Id. The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses, to determine whether the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction should be reversed and a new trial ordered. Id. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.

{¶13} In order to convict a defendant of grand theft, the state is required to prove beyond a reasonable doubt that the defendant, with purpose to deprive the owner of property, knowingly obtained or exerted control over the property without the consent of the owner or person authorized to give consent, and that the value of the property was five thousand dollars or more. See R.C. 2913.02(A)(1)&(B)(2). To convict a defendant of selling a motor vehicle without a title, the state must prove that the defendant did purport to sell or transfer a motor vehicle without delivering to the purchaser or transferee a certificate of title. See R.C. 4505.19(A)(2).

**{¶14}** In reviewing the entire transcript and all of the evidence in a light most favorable to the prosecution, we find that there was sufficient evidence of each element of the offenses to find O'Black guilty beyond a reasonable doubt. While we agree that the evidence indicated that Shin was the person who was primarily involved in running the business, and he may have played a greater role in the theft and title offenses at issue here, there was sufficient evidence of O'Black's personal knowledge and involvement to sustain the trial court's judgment.

**{¶15}** Ludlow was engaged to O'Black's niece, and had first met Shin at O'Black's brother's home. He had subsequently purchased several vehicles from Land & Sea before asking Shin to sell the Explorer. Ludlow and his fiancé were accustomed to talking to O'Black on a regular basis. However, he testified that after the Explorer was sold and he realized there was a problem with the payment, O'Black stopped taking calls from them. He testified, "I knew something was wrong with the business. And I actually even called and left [O'Black] a voicemail and it was just a simple friendly thing. I said, 'Angela, you need to look into this business. Something is not right. I don't want to see you get hurt.' " (Trial Tr. p. 25.)

**{¶16}** Harris testified that she and O'Black had been best friends for six or seven years. They had been neighbors and they regularly talked and texted each

other several times a day. Contrary to O'Black's assertion that that she did not participate in the business, Harris testified that O'Black was participating in the business; that O'Black had told her that she and Shin were "starting a business together"; that O'Black would regularly drive back and forth to obtain and drop off cars from customers and auctions; and that O'Black had personally told Harris that she took care of all the license plate transfers in the business. Harris also testified that it was O'Black who told her about the red Explorer, told her that it drove nicely, and took her to the business to see it.

{¶17} When Harris began to learn of the problems with the Explorer and the title, O'Black was always the first person Harris called, and O'Black would then refer the calls to calls to Shin. When Harris eventually learned what had happened with the Explorer and the title, Harris testified that she "proceeded to let [O'Black] know all the way, 'something's not right. Where's my title?' " (Id. at p. 48.) O'Black would merely back up Shin's stories. Harris testified that she gave them ample opportunity to give her the title, but "they just kept lying." (Id.) Harris specifically indicated that the reference to "they" meant Shin *and O'Black*. Harris further testified,

> **I started to send her texts when I realized stuff was going on because I didn't want her to get in trouble and I wanted her to be aware and take control of her company and get this taken care of before it ruined a friendship, before it ruined everything. *** I text[ed] her "[Shin] is scamming you. He is scamming**

> **everybody. You know what's going on. I have told you. You need to get my money back."**

(Id. at p. 51.) O'Black's "last and final" text to Harris in reply was, "You are way out of line," and then Harris never heard from O'Black again. (Id.) Harris stated that in the beginning she was concerned that O'Black didn't know what was going on, "but after I told her many times, then I was no longer concerned because I knew she had ample opportunity make things right with me." (Id. at p. 66.)

{¶18} O'Black complains that there was not sufficient evidence to directly connect her with the criminal transactions. Generally, the intent of a person cannot be proven by the direct testimony of a third person, rather it must be gathered from the surrounding facts and circumstances of the particular case. *State v. Johnson* (1978), 56 Ohio St.2d 35, 381 N.E.2d 637, quoting *State v. Huffman* (1936), 131 Ohio St. 27, 1 N.E.2d 313. "Direct evidence of a fact is not a prerequisite for a trial court to make a finding of that fact." *State v. Cornett*, 3d Dist. No. 13-09-13, 2009-Ohio-3531, ¶11, citing *State v. Lott* (1991), 51 Ohio St.3d 160, 167, 555 N.E.2d 293. Circumstantial evidence and direct evidence have the same probative value. *State v. Gillman*, 3d Dist. No. 14-08-08, 2008-Ohio-2606, ¶17. As stated above, and construing the evidence in favor of the prosecution, there was sufficient evidence for the fact-finder to reasonably conclude and infer that O'Black was fully aware of, and participated in, the charged offenses.

{¶19} We also do not find that the decision was against the manifest weight of the evidence. Although O'Black proffered testimony denying any knowledge and involvement in the offenses, this testimony was contradicted by Harris' testimony and other evidence. Even if an accused offers an innocent explanation for his conduct, "a jury is not required to accept a competing inference of innocence if it may infer guilt, beyond a reasonable doubt, from the same circumstances." *State v. Rollison*, 3d Dist. No. 9-09-52, 2010-Ohio-2162, ¶27, quoting *State v. Levingston* (1995), 106 Ohio App.3d 433, 437, 666 N.E.2d 312.

{¶20} Furthermore, the trier of fact was in the better position to judge the credibility of the witnesses. In addition to testimony refuting O'Black's claims as to a lack of knowledge and involvement in the business and what was transpiring, the prosecution offered considerable evidence that raised issues concerning O'Black's truthfulness and veracity. There was evidence that O'Black had conspired with Shin to reduce Shin's assets/income in order to avoid paying child support; that O'Black had changed her representation as to her position in the corporation and as sole shareholder, in sworn documentation, in order to obtain financing; that O'Black had underrepresented her assets, "forgetting" to include an almost ten-carat diamond bracelet, for purposes of obtaining appointed counsel; and that O'Black was still making calls on Shin's behalf, just a week before trial, and attempting to make what may have been questionable vehicle transfers. And,

even though O'Black represents that Land & Sea was a completely legitimate business that never had any other problems other then with this Explorer, Price testified that she had received phone calls from subjects out of state who also claimed they had not received titles. We cannot say that the fact finder clearly lost its way or that the evidence weighed heavily against conviction.

{¶21} O'Black also sets forth arguments claiming that it was wrong to "pierce the corporate veil" and find her individually guilty based upon her corporate position as an officer or shareholder. However, O'Black was not indicted or found guilty because of her corporate position or relationship. The counts in the indictment were based upon her personal actions and participation, done jointly with Shin. Therefore, these arguments do not have any merit.

{¶22} For the reasons set forth above, O'Black's assignments of error are overruled. Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS and PRESTON, J.J., concur.**

**/jlr**