[Cite as *State v. Canankamp*, 2023-Ohio-43.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO.  2-22-02

    v.

FELICIA M. CANANKAMP,          O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Auglaize County Common Pleas Court
Trial Court No.  2021 CRB 00082

Judgment Affirmed

Date of Decision:  January 9, 2023

APPEARANCES:

    *Thomas J. Lucente, Jr.* for Appellant

    *Reed D. Searcy* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Felicia M. Canankamp ("Canankamp"), appeals the December 21, 2021 judgment entry of sentence of the Auglaize Municipal Court. For the reasons that follow, we affirm.

{¶2} This case stems from the embittered relationship between Canankamp and Dylan Myers ("Myers"), which ended in November 2020 when Myers moved out of Canankamp's residence. Even though the couple ended their romantic relationship, they still had contact with one another. After Myers ended his relationship with Canankamp, he began a romantic relationship with Alexis Gordon ("Gordon") and that couple moved in together. Nevertheless, Myers's relationship with Gordon soured after he became involved with another woman and an explicit video of Myers and that woman was distributed on Facebook (by Canankamp).

{¶3} As a result of the video, Canankamp and Gordon conspired for Canankamp along with Tiara Osario ("Osario"), Canankamp's neighbor, to confront Myers in the home that Gordon shared with Myers. Consequently, as part of the plan, the three women arrived at the residence while Myers was at work on the evening of December 1, 2020. Before Myers returned to the residence, Canankamp ransacked the home.

{¶4} Moreover, while waiting for Myers to return, the women devised a plan to assault Myers. As part of the plan, Canankamp and Osario hid from Myers's

sight while Gordon confronted Myers. Thereafter, Canankamp emerged carrying a baseball bat and confronted Myers. Osario appeared behind Canankamp recording the encounter on her cellphone.

{¶5} Even though Myers requested Canankamp to leave his residence, Canankamp escalated the confrontation by grabbing Myers's beard and pulling him from the table at which he was sitting. Subsequently, Canankamp began striking Myers with the baseball bat. Eventually, Myers was able to end the altercation by escaping to retrieve his service weapon from his vehicle. After retrieving the weapon, Myers reentered the residence and ordered the women to leave. Eventually, Osario called law enforcement and the women left.

{¶6} Nevertheless, the women returned to the scene and provided law enforcement with a competing version of events to that which Myers had given to law enforcement. Importantly, following the incident, Canankamp concocted a story for the women to tell law enforcement that no baseball bat was involved in Myers's assault. However, law enforcement discovered the baseball bat in Canankamp's vehicle from a photograph—captured on the evening of the incident—that Canankamp provided to law enforcement. (State's Ex. 21).

{¶7} On January 29, 2021, Canankamp was charged by complaint with six counts: Count One of assault in violation of R.C. 2903.13(A), a first-degree misdemeanor; Count Two of falsification in violation of R.C. 2921.13(A)(3), a first-

degree misdemeanor; Count Three of theft in violation of R.C. 2913.02(A)(1), first-degree misdemeanor; Count Four of intimidation of a victim or witness in criminal case in violation of R.C. 2921.04(A), a first-degree misdemeanor; Count Five of criminal damaging in violation of R.C. 2909.06(A)(1), a second-degree misdemeanor; and Count Six of criminal trespassing in violation of R.C. 2911.21(A)(1), a fourth-degree misdemeanor. On February 17, 2021, Canankamp appeared for arraignment and entered pleas of not guilty to the charges.

{¶8} The case proceeded to a jury trial on November 15-18, 2021. On November 18, 2021, the jury found Canankamp guilty of Counts One, Two, Three, Five, and Six, but not guilty of Count Four. On December 21, 2021, the trial court sentenced Canankamp to three years of community-control sanctions, including 180 days in jail as to Counts One, Two, and Three, respectively, and 30 days in jail as to Counts Five and Six, respectively. (Doc. No. 244). The trial court ordered that Canankamp serve the jail terms imposed as to Counts One, Two, and Three consecutively. Further, the trial court ordered Canankamp to serve the jail terms imposed as to Counts Five and Six be served concurrently to the consecutive jail terms imposed as to Counts One, Two, and Three for an aggregate sentence of 540 days in jail. Nevertheless, the trial court suspended 450 days of Canankamp's jail sentence conditioned on her compliance with her community-control sanctions.

{¶9} Canankamp filed her notice of appeal on January 7, 2022. She raises four assignments of error for our review. For ease of our discussion, we will begin by discussing Canankamp's first and second assignments of error together, followed by her third assignment of error, then her fourth assignment of error.

**Assignment of Error No. I**

**Appellant's Convictions Were Against the Manifest Weight of the Evidence and Contrary to Law.**

**Assignment of Error No. II**

**The Trial Court Abused its Discretion in Not Granting the Defendant's Motion For Acquittal, Pursuant to Criminal Rule 29, in that the Evidence of the State of Ohio Was Insufficient For the Matter to Have Been Submitted to the Jury.**

{¶10} In her first and second assignments of error, Canankamp argues that her assault, falsification, theft, criminal-damaging, and criminal-trespassing convictions are based on insufficient evidence and are against the manifest weight of the evidence.

*Standard of Review*

{¶11} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Thus, we address each legal concept individually.

{¶12} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at

trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997).  Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Id.*  "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact."  *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

{¶13} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  *Thompkins* at 387,

quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Sufficiency of the Evidence Analysis*

{¶14} As an initial matter, the record reveals that Canankamp failed to renew her Crim.R. 29(A) motion at the conclusion of her case-in-chief or at the conclusion of all the evidence.

> In order to preserve the issue of sufficiency on appeal, this court has held that "[w]hen a defendant moves for acquittal at the close of the state's evidence and that motion is denied, the defendant waives any error which might have occurred in overruling the motion by proceeding to introduce evidence in his or her defense. In order to preserve a sufficiency of the evidence challenge on appeal once a defendant elects to present evidence on his behalf, the defendant must renew his Crim.R. 29 motion at the close of all the evidence."

*State v. Hurley*, 3rd Dist. Hardin No. 6-13-02, 2014-Ohio-2716, ¶ 37, quoting *State v. Edwards*, 3d Dist. Marion No. 9-03-63, 2004-Ohio-4015, ¶ 6. Based on this court's precedent, Canankamp's failure to renew her Crim.R. 29(A) motion at the conclusion of her case-in-chief or at the conclusion of all evidence waived all but

plain error on appeal. *Id.* at ¶ 37, citing *State v. Flory,* 3d Dist. Van Wert No. 15-04-18, 2005-Ohio-2251, citing *Edwards*.

**{¶15}** "However, '[w]hether a sufficiency of the evidence argument is reviewed under a prejudicial error standard or under a plain error standard is academic.'" *Id.* at ¶ 38, citing *Perrysburg v. Miller*, 153 Ohio App.3d 665, 2003-Ohio-4221, ¶ 57 (6th Dist.), quoting *State v. Brown,* 2d Dist. Montgomery No. 17891, 2000 WL 966161, *8 (July 14, 2000). "Regardless of the standard used, 'a conviction based on legally insufficient evidence constitutes a denial of due process, and constitutes a manifest injustice.'" *Id.*, quoting *Thompkins,* 78 Ohio St.3d at 386-87. Accordingly, we will proceed to determine whether the State presented sufficient evidence to support Canankamp's convictions. *See id.*

**{¶16}** We begin by addressing Canankamp's sufficiency-of-the-evidence argument as it relates to her assault conviction, followed by her falsification conviction, then her sufficiency-of-the-evidence argument as it relates to her theft conviction. Finally, we will address Canankamp's sufficiency-of-the-evidence argument as it relates to her criminal-damaging and criminal-trespassing convictions.

*Assault*

**{¶17}** Canankamp was convicted of assault under R.C. 2903.13(A), which provides, in its relevant part, that "[n]o person shall knowingly cause or attempt to cause physical harm to another * * * ."

> A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

R.C. 2901.22(B). Physical harm "means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

**{¶18}** On appeal, Canankamp argues that there is insufficient evidence that she caused or attempted to cause physical harm to Myers because she "was assaulted by being choked by Mr. Myers, and only picked up a bat in self-defense." (Appellant's Brief at 14). However, Canankamp's challenge to the sufficiency of the evidence insofar as it invokes self-defense is inappropriate. *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 10, citing *State v. Vasquez*, 10th Dist. Franklin No. 13AP-366, 2014-Ohio-224, ¶ 52. Under Ohio law, "[s]elf-defense is an affirmative defense * * * ." *Id.* at ¶ 11. *See also State v. Messenger*, ___ Ohio St.3d ___, 2022-Ohio-4562, ¶ 1. The "due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime.'"'" *Id.*, quoting *Vasquez* at ¶ 52,

quoting *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 37. Canankamp's self-defense contentions are therefore consigned to our analysis of the manifest weight of the evidence. *Accord Vasquez* at ¶ 52.

*Falsification*

**{¶19}** Next, we will address the sufficiency of the evidence supporting Canankamp's falsification conviction. The falsification offense of which Canankamp was convicted provides, in its relevant part, that "[n]o person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when" "[t]he statement is made with purpose to mislead a public official in performing the public official's official function." R.C. 2921.13(A)(3).

**{¶20}** Knowingly has the same definition as it is defined in conjunction with our analysis of Canankamp's assault conviction. "A person acts purposely when it is his [or her] specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his [or her] specific intention to engage in conduct of that nature." R.C. 2901.22(A). Even though it is not statutorily defined, other courts of appeal have defined a "false statement" to mean "an intentionally untrue declaration." *State v. Velez*, 9th Dist. Lorain No. 13CA010370,

2014-Ohio-4269, ¶ 6, citing *State v. Davidson*, 131 Ohio App.3d 607, 611 (7th Dist.1998).

**{¶21}** Consequently, the State was required to prove beyond a reasonable doubt that Canankamp knowingly made a false statement to law enforcement with the purpose of misleading law enforcement in its investigation. However, Canankamp argues only that a rational trier of fact could not have found beyond a reasonable that she acted with knowledge or purpose. Because they are the only elements that Canankamp challenges on appeal, we will review the sufficiency of the evidence supporting only whether she acted with knowledge and purpose.

**{¶22}** "Generally, the intent of a person cannot be proven by direct evidence, thus proof of intent may be shown from circumstantial evidence." *State v. Cole*, 3d Dist. Seneca No. 13-10-30, 2011-Ohio-409, ¶ 23, citing *State v. Lott*, 51 Ohio St.3d 160, 168 (1990) and *State v. O'Black*, 3d Dist. Allen No. 1-10-25, 2010-Ohio-4812, ¶ 18. "Circumstantial evidence is "'the proof of certain facts and circumstances in a given case, from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind.'"" *Id.*, quoting *State v. Fisher*, 3d Dist. Auglaize No. 2-10-09, 2010-Ohio-5192, ¶ 26, quoting *State v. Duganitz*, 76 Ohio App.3d 363, 367 (8th Dist.1991), citing *Black's Law Dictionary* 221 (5th Ed.1979).

**{¶23}** Circumstantial evidence has no less probative value than direct evidence. *State v. Griesheimer*, 10th Dist. Franklin No. 05AP-1039, 2007-Ohio-837, ¶ 26, citing *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. *See also State v. Heinish*, 50 Ohio St.3d 231, 238 (1990) ("This court has long held that circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt."). "'[A]ll that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.'" *State v. Miller*, 8th Dist. Cuyahoga No. 103591, 2016-Ohio-7606, ¶ 61, quoting *Jenks* at 272. "'"Circumstantial evidence is not only sufficient, but may also be more certain, satisfying, and persuasive than direct evidence."'" *Id.*, quoting *State v. Hawthorne*, 8th Dist. Cuyahoga No. 96496, 2011-Ohio-6078, ¶ 9, quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6 (1960).

**{¶24}** Viewing the evidence in a light most favorable to the prosecution, we conclude that Canankamp's falsification conviction is based on sufficient evidence. That is, the State presented sufficient evidence at trial from which the trier of fact could reasonably infer that Canankamp acted with knowledge and purpose. Specifically, the State presented evidence from which the jury could infer that Canankamp embarked on a course of conduct aimed at hindering law enforcement's investigation in such a way that she would not be criminally liable for her conduct.

*See State v. Lazzaro*, 76 Ohio St.3d 261, 265 (1996). That is, Canankamp initiated the concealment by lying to law enforcement about the baseball bat. (Nov. 15-18, 2021 Tr., Vol. II, at 474). Canankamp furthered the rouse by changing her story and telling law enforcement that she had a baseball bat but that the baseball bat never left her vehicle. (State's Ex. 23B). Most importantly, the State presented Osario's testimony corroborating that the three women conspired to provide law enforcement with a fictitious statement, purposely omitting that the baseball bat was used to assault Myers.

{¶25} Based on that evidence, a rational trier of fact could have found beyond a reasonable doubt that Canankamp acted with knowledge and purpose. Specifically, the jury could infer from the evidence presented by the State at trial that Canankamp was aware that she was providing a false statement to law enforcement. Likewise, a rational trier of fact could infer from the evidence presented that Canankamp intended to mislead law enforcement from discovering the truth of the baseball bat. *See State v. McLaughlin*, 2d Dist. Montgomery No. 26521, 2015-Ohio-4611, ¶ 23. Consequently, Canankamp's falsification conviction is based on sufficient evidence.

*Theft*

{¶26} We also reject Canankamp's argument that her theft conviction is based on insufficient evidence. R.C. 2913.02, Ohio's theft statute, provides, in its

relevant part, that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services" "[w]ithout the consent of the owner or person authorized to give consent." R.C. 2913.02(A)(1).

**{¶27}** Under the statute, "owner," "means * * * any person, other than the actor, who is the owner of, who has possession or control of, * * * even though the ownership, possession, control, license, or interest is unlawful." R.C. 2913.01(D). "Deprive" means to "[w]ithhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration" or to "[d]ispose of property so as to make it unlikely that the owner will recover it." R.C. 2913.01(C)(1)-(2). "R.C. 2913.02(A) requires proof of two different culpable mental states: 'purpose' and 'knowingly,'" which mean the same thing as defined in our analysis of Canankamp's assault and falsification convictions, respectively. *State v. Laws*, 3d Dist. Allen No. 1-20-10, 2021-Ohio-166, ¶ 26.

**{¶28}** Here, Canankamp argues that there is insufficient evidence supporting her theft conviction because the State presented insufficient evidence that she deprived Myers of his car keys (since she later returned them). Canankamp's argument is without merit. Contrary to Canankamp's argument on appeal, Myers's car keys were not the only item of personal property removed during the ransacking

of Myers's residence. Specifically, Myers testified that he noticed various items of clothing—namely, a motorcycle vest—as well as a knife, money, and a cell phone missing from his residence following the ransacking of the residence led by Canankamp. Myers testified that he knew that Canankamp took the motorcycle vest because he later received a text message from her indicating that she had given it to another person. Likewise, Myers testified that he knew that Canankamp took his cell phone because "[s]he ripped it out of [his] hands * * * ." (Nov.15-18, 2021 Tr., Vol. I, at 130). Importantly, Myers testified that he did not consent to Canankamp removing any property from his residence that evening. Moreover, Myers's testimony is bolstered by Osario's testimony that she witnessed Canankamp remove several items of clothing (including the motorcycle vest) as well as the cell phone from Myers's residence.

{¶29} Viewing this evidence in a light most favorable to the prosecution, Canankamp's theft conviction is based on sufficient evidence.

### Criminal Damaging

{¶30} Furthermore, Canankamp was convicted of criminal damaging in violation of R.C. 2909.06(A)(1). R.C. 2909.06 provides, in its relevant part, that "[n]o person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent" "[k]nowingly, by any means." R.C. 2909.06(A)(1).

> "Physical harm to property" means any tangible or intangible damage to property that, in any degree, results in loss to its value or interferes with its use or enjoyment. "Physical harm to property" does not include wear and tear occasioned by normal use.

R.C. 2901.01(A)(4).

**{¶31}** In support of this sufficiency-of-the-evidence challenge, Canankamp argues that a rational trier of fact could not have found her guilty of criminal damaging because "the state's evidence of any alleged damage to property by [Canankamp] is a blank canvas, with the only paint provided by Tiara Osorio [sic], a witness established as so untrustworthy as to consider her testimony tainted." (Appellant's Brief at 17). Canankamp's credibility argument is misplaced. The credibility and weight of the evidence is primarily the role of the trier-of-fact—in this case, the jury. *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, ¶ 106, citing *DeHass*, 10 Ohio St.2d 230, at paragraph one of the syllabus. In assessing the sufficiency of the evidence, we do not resolve evidentiary conflicts or assess the credibility of witnesses; rather, we determine if any rational trier of fact could have found the essential elements of criminal damaging beyond a reasonable doubt when viewing the evidence in a light most favorable to the prosecution. *Jenks*, 61 Ohio St.3d 259, at paragraph two of the syllabus; *Jones*, 2013-Ohio-4775, at ¶ 33.

**{¶32}** Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Canankamp knowingly caused physical harm to Myers's property without his consent. Indeed,

Osario testified that she witnessed Canankamp cut the cord of Myers's beard straightener and break a glass sign when Canankamp was ransacking Myers's residence. Likewise, Myers's testimony describing the property damage that he assessed following the incident corroborates Osario's testimony. Specifically, Myers testified that he discovered the cord cut from his beard straightener as well as the broken glass sign following the incident. Significantly, Myers testified that he did not consent to the destruction of any of his property. Therefore, Canankamp's criminal damaging conviction is based on sufficient evidence.

*Criminal Trespassing*

{¶33} Finally, we will address the sufficiency of the evidence supporting Canankamp's criminal-trespassing conviction. Criminal trespassing is codified under R.C. 2911.21, which provides, in its relevant part, that "[n]o person, without privilege to do so, shall" "[k]nowingly enter or remain on the land or premises of another." R.C. 2911.21(A)(1). "'For purposes of criminal trespass, privilege "includes permission to enter the premises given by a resident of the premises."'" *State v. Nurein*, 3d Dist. Union No. 14-21-18, 2022-Ohio-1711, ¶ 48, quoting *State v. Smith*, 2d Dist. Montgomery No. 25048, 2012-Ohio-4861, ¶ 12, quoting *State v. Clelland*, 83 Ohio App.3d 474, 490 (4th Dist.1992). "[T]he privilege of an invited guest to be on the premises is terminated if he commits a violent act." *State v.*

*Young*, 4th Dist. Scioto No. 07CA3195, 2008-Ohio-4752, ¶ 25, citing *State v. Steffen*, 31 Ohio St.3d 111, 115 (1987).

**{¶34}** Canankamp argues that her criminal-trespassing conviction is based on insufficient evidence because she was an invited guest. However, even if Canankamp was initially invited to the residence by Gordon, her status as an invited guest terminated when Myers told her to leave or—at the very latest—when she began the assault on him. *See Young* at ¶ 26; *State v. Winbush*, 2d Dist. Clark No. 2016-CA-1, 2017-Ohio-696, ¶ 67. Consequently, Canankamp's criminal-trespassing conviction is based on sufficient evidence.

*Manifest Weight of the Evidence*

**{¶35}** Having concluded that Canankamp's assault, falsification, theft, criminal-damaging, and criminal-trespassing convictions are based on sufficient evidence, we next address Canankamp's arguments that her assault, falsification, theft, criminal-damaging, and criminal-trespassing convictions are against the manifest weight of the evidence. Generally, Canankamp makes many of the same arguments that she makes in her sufficiency-of-the-evidence arguments challenging her convictions. That is, Canankamp principally asserts that, because there is insufficient evidence supporting her convictions, that evidence also weighs against her convictions.

*Assault*

**{¶36}** First, Canankamp contends that her assault conviction is against the manifest weight of the evidence because the jury lost its way in finding that she acted in self-defense. That is, Canankamp contends that the weight of the evidence adduced at trial demonstrates that she used force on Myers in self-defense or in defense of Gordon.

**{¶37}** "Ohio's self-defense laws have been in a state of flux over the course of the last several years." *State v. Barker*, 2d Dist. Montgomery No. 29227, 2022-Ohio-3756, ¶ 35. "Under the amended statute, the defendant retains the burden of production, which is the burden of producing evidence 'that tends to support' that the defendant used the force in self-defense." *State v. Petway*, 11th Dist. Lake No. 2019-L-124, 2020-Ohio-3848, ¶ 55, quoting *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31. *See also Messenger*, ___ Ohio St.3d ___, 2022-Ohio-4562, at ¶ 19, 21. "The burden of persuasion has been shifted to the prosecution to disprove at least one of the elements of self-defense beyond a reasonable doubt." *Petaway* at ¶ 55. *See* R.C. 2901.05(B)(1).

**{¶38}** "'To establish self-defense, a defendant must introduce evidence showing that: (1) he was not at fault in creating the violent situation; (2) he had a bona fide belief that he was in imminent danger of bodily harm; and (3) he did not violate any duty to retreat or avoid the danger.'" *State v. Mays*, 2d Dist.

Montgomery No. 29051, 2022-Ohio-3659, ¶ 19, quoting *State v. Brown*, 2d Dist. Montgomery No. 27312, 2017-Ohio-7424, ¶ 24. *See also Messenger* at ¶ 25. Importantly, "'[i]t is well established that a person cannot provoke a fight or voluntarily enter combat and then claim self-defense.'" *Mays* at ¶ 19., quoting *State v. James*, 2d Dist. Montgomery No. 28892, 2021-Ohio-1112, ¶ 21. "'Moreover, a defendant must have a bona fide belief that the use of force was the only means of escape.'" *Id.*, quoting *State v. Lovett*, 2d Dist. Montgomery No. 29240, 2022-Ohio-1693, ¶ 42. "'Part of this entails a showing that the defendant used "only that force that [was] reasonably necessary to repel the attack."'" *Id.*, quoting *State v. Wallace-Lee*, 2d Dist. Greene No. 2019-CA-19, 2020-Ohio-3681, ¶ 42, quoting *State v. Bundy*, 4th Dist. Pike No. 11CA818, 2012-Ohio-3934, ¶ 55.

{¶39} Based on our review of the record, the trial court did not lose its way as to Canankamp's self-defense assertion. Significantly, Canankamp bore the initial burden of production demonstrating that she was not at fault for creating the violent situation. However, the evidence unequivocally reflects that Canankamp was *at fault* for creating the violent situation. *Accord Petway* at ¶ 75-76. Specifically, it is undisputed that Canankamp went to Myers's residence to confront him about his infidelity. Moreover, Canankamp ambushed Myers after obscuring her presence from Myers when he returned home from work that evening. In other words, there

is no set of facts under which Canankamp was not at fault for creating the violent situation at issue in this case.

**{¶40}** Therefore, based on our review of the record, the trier of fact did not only *not* lose its way by concluding that Canankamp did not act in self-defense but self-defense was not a proper legal theory for the jury to consider in this case. That is, Canankamp was not entitled to such jury instruction. Consequently, Canankamp's manifest-weight-of-the-evidence argument as to her assault conviction is without merit.

*Falsification, Theft, and Criminal Damaging*

**{¶41}** Next, Canankamp contends that her falsification, theft, and criminal-damaging convictions are against the manifest weight of the evidence because those convictions are principally based on the testimony of Osario, who was not credible. Specifically, Canankamp argues that Osario's testimony is not believable because Osario (admittedly) fabricated her statement describing the incident to law enforcement. Instead, despite Osario's testimony to the contrary, Canankamp maintains that she did not damage or take any of Myers's property. Rather, Canankamp alleges that she retrieved a computer charger and motorcycle vest belonging to her. Likewise, as an alternative explanation for the alleged missing property, Canankamp testified that Myers left some of the property (that he claimed was missing) at her residence after he moved out.

> "Although we consider the credibility of witnesses in a manifest weight challenge, we are mindful that the determination regarding witness credibility rests primarily with the trier of fact because the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections—observations that are critical to determining a witness's credibility."

*State v. Bentz*, 3d Dist. Allen No. 1-16-17, 2017-Ohio-5483, ¶ 98, quoting *State v. Williams*, 8th Dist. Cuyahoga No. 98210, 2013-Ohio-573, ¶ 31, citing *State v. Clark*, 8th Dist. Cuyahoga No. 94050, 2010-Ohio-4354, ¶ 17, citing *State v. Hill*, 75 Ohio St.3d 195, 205 (1996) and *State v. Antill*, 176 Ohio St. 61, 66 (1964).

> "'[N]inety percent of the total meaning of testimony is interpreted through non-verbal behavior, such as voice inflections, hand gestures, and the overall visual demeanor of the witness. The witness' choice of words accounts for only ten percent of the meaning of their testimony.'"

*In re D.L.*, 3d Dist. Crawford No. 3-11-08, 2012-Ohio-1796, ¶ 32, quoting *State v. Brown*, 3d Dist. Allen No. 1-10-31, 2011-Ohio-1461, ¶ 51, quoting *State v. Evans*, 67 Ohio St.3d 405, 410-411 (1993). "Thus, the decision whether, and to what extent, to believe the testimony of each witness is within the province of the factfinder." *Id.* Accordingly, we will not second guess "the jury's witness-credibility determination unless it is clear that the jury lost its way and a miscarriage of justice occurred." *State v. Thompson*, 3d Dist. Seneca No. 13-17-26, 2018-Ohio-637, ¶ 109.

**{¶42}** Furthermore, "[a] defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial." *State*

*v. Campbell*, 10th Dist. Franklin No. 07AP-1001, 2008-Ohio-4831, ¶ 23, citing *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21. The trier of fact "'"may take note of the inconsistencies and resolve or discount them accordingly, [but] such inconsistencies do not render [a] defendant's conviction against the manifest weight or sufficiency of the evidence."'" *State v. Ealy*, 10th Dist. Franklin No. 15AP-600, 2016-Ohio-1185, ¶ 19, quoting *State v. Samatar*, 152 Ohio App.3d 311, 2003-Ohio-1639, ¶ 113 (10th Dist.), quoting *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 2000 WL 297252, *3 (Mar. 23, 2000).

{¶43} After reviewing the evidence, the jury did not lose its way and create such a manifest miscarriage of justice in its witness-credibility determination requiring that we reverse Canankamp's convictions and order a new trial. Notwithstanding Osario's questionable credibility, the jury also observed Canankamp testify "and we are mindful of the jury's 'superior first-hand perspective in judging the demeanor and credibility of witnesses.'" *State v. Suffel*, 3d Dist. Paulding No. 11-14-05, 2015-Ohio-222, ¶ 33, quoting *State v. Phillips*, 10th Dist. Franklin No. 14AP-79, 2014-Ohio-5162, ¶ 125, citing *DeHass*, 10 Ohio St.2d 230, at paragraph one of the syllabus. In other words, even though Canankamp denied damaging property, taking property, and lying to law enforcement, the jury was able to compare her testimony against the balance of the State's evidence presented at trial. It is well within the province of the trier-of-fact to determine Canankamp's

credibility in making her statements, including the prerogative to find Canankamp's denials not to be truthful. *Accord State v. Voll*, 3d Dist. Union No. 14-12-04, 2012-Ohio-3900, ¶ 27.

{¶44} In sum, the evidence weighing in favor of Canankamp's falsification, theft, and criminal-damaging convictions is much weightier than the evidence against them. Significantly, in addition to Myers's and Osario's testimony, the State presented the testimony of two law enforcement officers—Lieutenant Kevin Prenger ("Lieutenant Prenger") and Patrolman Cody Jenkins ("Patrolman Jenkins") of the Wapakoneta Police Department—who investigated the case. Lieutenant Prenger's body camera was activated during his interactions with Myers and Canankamp and that footage was played for the jury. The audio recordings of telephone calls placed by Lieutenant Prenger and Patrolman Jenkins to Canankamp, respectively, were also played for the jury. Of further significance—even though Osario deleted most of the video she recorded—a portion of that (undeleted) video footage depicting Canankamp with a baseball bat during the incident was played for the jury. (*See* State's Ex. 7).

{¶45} Moreover, Canankamp's argument that the evidence weighs against her theft conviction because she "did not need Mr. Myers's consent to possess property already owned by [her]," is specious. (Appellant's Brief at 10). Imperatively, "'[t]he important question is not whether the person from whom the

property is stolen was the actual owner, but rather whether the defendant had any lawful right to possession.'" *State v. Gau*, 11th Dist. Lake No. 2018-L-044, 2018-Ohio-5191, ¶ 19, quoting *State v. Jones*, 8th Dist. Cuyahoga No. 92921, 2010-Ohio-902, ¶ 12. "'[T]he gist of a theft offense is the wrongful taking by the defendant, not the particular ownership of the property.'" *State v. Miller*, 3d Dist. Shelby No. 17-13-24, 2015-Ohio-644, ¶ 30, quoting *Jones* at ¶ 12. The weight of the evidence presented at trial demonstrates that Canankamp deprived Myers (without his consent) of property over which he had possession or control. *See Miller* ¶ 30 (concluding that "it is not necessary to prove title ownership under the theft statute, and all that is required is proof that a defendant deprived someone of property who had 'possession or control of, or any license or any interest in' that property"), quoting *State v. Grayson*, 11th Dist. Lake No. 2006-L-153, 2007-Ohio-1772, ¶ 26, citing *State v. Rhodes*, 2 Ohio St.3d 74, 76 (1982).

**{¶46}** For the reasons discussed, we conclude that the jury did not clearly lose its way and create a manifest miscarriage of justice that Canankamp's falsification, theft, and criminal-damaging convictions must be reversed and a new trial ordered.

### *Criminal Trespassing*

**{¶47}** Finally, Canankamp argues that her criminal-trespassing conviction is against the manifest weight of the evidence because the weight of the evidence

demonstrates that she left the residence when "such 'revocation' was made [by Myers] with a loaded gun pointed at [her] head * * * ." (Appellant's Brief at 12). Contrary to Canankamp's contention, we conclude that the jury did not lose its way by determining that Canankamp trespassed or that any privilege to enter (and remain in) Myers's home was revoked. *Accord State v. Berry*, 3d Dist. Hancock No. 5-16-16, 2017-Ohio-1490, ¶ 25. That is, the trier of fact did not lose its way by concluding that a trespass occurred since the weight of the evidence reflects that Myers not only revoked Canankamp's privilege to remain in the residence but that Canankamp initiated a criminal offense against Myers. *See id.*, citing *State v. Stevens*, 3d Dist. Allen No. 1-14-58, 2016-Ohio-446, ¶ 34, citing *State v. Steffen*, 31 Ohio St.3d 111, 115 (1987). As a result, Canankamp's criminal-trespassing conviction is not against the manifest weight of the evidence.

{¶48} Canankamp's first and second assignments of error are overruled.

## Assignment of Error No. III

**Defendant Was Denied Her Constitutional Right to Present a Complete Defense Because The Trial Court Excluded Relevant and Admissible Evidence.**

{¶49} In her third assignment of error, Canankamp argues that the trial court abused its discretion by excluding exculpatory evidence. Specifically, Canankamp contends that police reports, Myers's medical records, and text messages sent by Gordon to Osario were improperly excluded.

Case No. 2-22-02

**{¶50}** "Generally, '[a] trial court is given broad discretion in admitting and excluding evidence * * * .'" *State v. Wendel*, 3d Dist. Union No. 14-16-08, 2016-Ohio-7915, ¶ 23, quoting *State v. Williams*, 7th Dist. Jefferson No. 11 JE 7, 2013-Ohio-2314, ¶ 7, citing *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984). Consequently, we review a trial court's admission or exclusion of evidence for an abuse of discretion. *Williams* at ¶ 7. An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

*Analysis*

**{¶51}** First, Canankamp argues that the trial court abused its discretion by excluding police reports and Myers's medical records. Canankamp contends that such evidence would have shown that Myers "has a propensity of brandishing his weapon when angry and is prone to violence" and "that he suffered from some mental illness that gave him the motive and intent not to perceive reality and to quickly brandish a firearm in a state of paranoia." (Appellant's Brief at 20-21). In other words, Canankamp argues that she should have been able to introduce this evidence at trial in support of her claim of self-defense to prove that Myers was the initial aggressor. Specifically, Canankamp argues that the trial court improperly excluded this evidence under Evid.R. 404. We disagree.

-27-

**{¶52}** "'Evid.R. 404 and Evid.R. 405 govern the admission of character evidence.'" *State v. Rice*, 7th Dist. Mahoning No. 21 MA 0085, 2022-Ohio-3291, ¶ 61, quoting *State v. Barnes*, 94 Ohio St.3d 21, 23 (2002).

> "Evid.R. 404(A) specifies when character evidence is admissible and provides:
>
> 'Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:
>
> * * *
>
> (2) Character of the victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible * * * .'"

*Id.*, quoting *Barnes* at 23, quoting Evid.R. 404(A).

**{¶53}** "[A] a defendant can introduce character evidence by reputation or opinion testimony under Evid.R. 405(A)." *Barnes* at 24. "But Evid.R. 405(B) is more narrowly drawn" and "precludes a defendant from introducing specific instances of the victim's conduct to prove that the victim was the initial aggressor." *Id.* Consequently, since Canankamp's purpose for introducing the police reports and medical records—i.e., specific instances of Myers's conduct—was to implicate Myers as the initial aggressor in support of her self-defense claim, the trial court did not abuse its discretion by excluding that evidence. *Accord id.* (concluding that "the

trial court did not abuse its discretion in excluding the evidence of [the victim's] prior instances of conduct" since "a defendant asserting self-defense cannot introduce evidence of specific instances of a victim's conduct to prove that the victim was the initial aggressor").

{¶54} Canankamp further argues that the trial court improperly excluded text messages text messages sent by Gordon to Osario. Specifically, Canankamp argues that the trial court erred by excluding the text messages as inadmissible hearsay. Instead, Canankamp argues that the text messages were admissible under Evid.R. 804(B)(3) or 803(1).

{¶55} To begin, it is undisputed that the text messages sent by Gordon to Osario are hearsay because the messages state what Gordon said in an attempt to escape charges for her conduct in this case in addition to her statement that she "didnt [sic] see a baseball bat." (Defendant's Ex. O). Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally not admissible unless an exception applies. Evid.R. 802. Among the listed exceptions is a statement against interest under Evid.R. 804(B)(3) and a present sense impression found in Evid.R. 803(1).

{¶56} Evid.R. 804(B)(3)

allows admission of "[a] statement that * * * at the time of its making
* * * so far tended to subject the declarant to * * * criminal liability *

-29-

* * that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

*State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 42, quoting Evid.R. 804(B)(3). For an unavailable witness's

statements to qualify under the statement against interest exception, the State must have established that (1) [the witness] was unavailable as a witness, (2) the statements were against [the witness's] interest and tended to subject him to criminal liability, and (3) corroborating circumstances indicate the trustworthiness of the statements.

*State v. Newsome*, 3d Dist. Putnam No. 12-12-03, 2012-Ohio-6119, ¶ 36, citing Evid.R. 804(B)(3). *See also State v. Issa*, 93 Ohio St.3d 49, 58 (2001) ("In order for a declarant's statement to qualify as an Evid.R. 804 exception to hearsay, it must first be shown that the declarant is unavailable as a witness."), citing Evid.R. 804(B). "All three elements must be present in order for the statements to be admissible under Evid.R. 804(B)(3)." *Newsome* at ¶ 36.

**{¶57}** "A witness who 'is unable to be present or to testify at the hearing because of death' is considered an unavailable witness for the purposes of the hearsay exception." *State v. Jones*, 9th Dist. Summit No. 28063, 2019-Ohio-289, ¶ 77, quoting Evid.R. 804(A)(4). Furthermore, "[t]he inference of trustworthiness from the corroborating circumstances must be strong and not merely allowable." *State v. Childs*, 2d Dist. Montgomery No. 16325, 1998 WL 598102, *9 (Sept. 11,

1998). "The relevant circumstances include 'only those that surround the making of the statement and that render the declarant particularly worthy of belief.'" *State v. Madrigal*, 87 Ohio St.3d 378, 387 (2000), quoting *Idaho v. Wright*, 497 U.S. 805, 819, 110 S.Ct. 3139 (1990).

{¶58} The parties agree that Gordon was unavailable to testify at trial because she died before trial. *Accord State v. Lewis*, 2d Dist. Montgomery No. 18098, 2000 WL 1867568, *6 (Dec. 22, 2000) (concluding that the witness was unavailable as a witness since she died before trial). Nevertheless, Canankamp argues that the trial court should have admitted the text messages under Evid.R. 804(B)(3) since "the text messages could have subjected [Gordon] to criminal charges." (Appellant's Brief at 21). In response, the State argues that the trial court properly excluded the text messages since Gordon's statement (that she did not see a baseball bat) is not a statement against her interest and because the balance of the text messages lack any indicia of trustworthiness.

{¶59} Indeed, Gordon's statement that she did not see a baseball bat is not a statement against interest. *Accord Lewis* at *6. Consequently, the trial court did not abuse its discretion by excluding that statement as inadmissible hearsay.

{¶60} Moreover, the trial court did not abuse its discretion by excluding the balance of the text messages as inadmissible hearsay because there are insufficient corroborating circumstances indicating the trustworthiness of Gordon's statements.

Significantly, the relationship between Gordon and Osario cannot be characterized as a friendship. *See Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 53 (concluding that "where a declarant makes a statement to someone with whom he has a close personal relationship, such as a spouse, child, or friend, courts usually hold that the relationship is a corroborating circumstance supporting the statement's trustworthiness").

{¶61} Further, the text messages at issue lack trustworthiness since they reflect Gordon's plans to manipulate the court system for her own benefit. *Compare Newsome* at ¶ 38 (concluding that the statements were trustworthy because the witness's "description of the robbery did not shift blame solely onto [the defendant] or minimize his participation in the robbery"). *See also State v. Luckie*, 5th Dist. Richland No. 16CA91, 2018-Ohio-594, ¶ 46 (concluding that "the statement does not implicate Appellant in a crime; [the declarant] merely acknowledged he knew Appellant and had Appellant's vehicle"). Accordingly, based on the totality of the surrounding circumstances, the balance of the text messages lacked the level of trustworthiness necessary to be admissible under Evid.R. 804(B)(3). Therefore, the trial court did not abuse its discretion by excluding the text messages as inadmissible hearsay.

{¶62} The text messages also do not fall within the present-sense-impression exception found under Evid.R. 803(1). "Under Evid.R. 803(1) a statement is not

excluded by the hearsay rule if the statement is 'describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless the circumstances indicate lack of trustworthiness.'" *State v. Upshaw*, 3d Dist. Logan No. 8-02-46, 2003-Ohio-5756, ¶ 7, quoting Evid.R. 803(1). "Though a statement made after an event can still pass muster as a present sense impression, it must stand very close in time to the event." *State v. Smith*, 1st Dist. Hamilton No. C-180499, 2019-Ohio-3257, ¶ 20. *See also Upshaw* at ¶ 7 ("There is an assumption that statements or perceptions that describe events uttered in a short time from the occurrence of the event are more trustworthy than statements not uttered shortly thereafter."). "[T]he justification for the present sense impression exception is the spontaneity of the statement and lack of time for the declarant's reflection." *Smith* at ¶ 20, citing *State v. Alexander*, 1st Dist. Hamilton No. C-110035, 2012-Ohio-460, ¶ 18 (concluding that the exception applied when "[declarant] had no time to reflect or to fabricate the substance of the conversation").

**{¶63}** Here, the trial court did not abuse its discretion by excluding the text messages as inadmissible hearsay because the text messages were not delivered within a short time from the occurrence of the event. *See State v. Carter*, 3d Dist. Seneca No. 13-17-10, 2017-Ohio-7443, ¶ 13 ("Put simply, there is nothing in the record that demonstrates the degree of temporal proximity between the statements [the declarant] relayed to [the witness] and the time that [the declarant] perceived

those statements."). Stated another way, the text messages are not Gordon's present-sense impression of the December 1, 2020 incident. Indeed, the record reveals that the messages were transmitted on August 21, 2021—that is, the messages were produced more than eight months after the incident at issue in this case occurred. Thus, the text messages were not admissible under Evid.R. 803(1).

{¶64} For these reasons, we conclude that the trial court did not abuse its discretion by excluding the text messages as inadmissible hearsay.

{¶65} Canankamp's third assignment of error is overruled.

### Assignment of Error No. IV

**Defendant's Due Process Rights Were Not Violated When the State of Ohio Violated the Brady Rule and Failed to Turn Over Information In a Timely Manner That Could Have Been Used to Impeach A State Witness and The Court Failed to do Anything to Mitigate the Damage Cause [sic] By the State's Violation.**

{¶66} In her fourth assignment of error, Canankamp argues that she was denied due process of law because the State failed to disclose material, exculpatory evidence—namely, Canankamp asserts that "the State had discussions with Ms. Osorio [sic] and Ms. Gordon in which they gave the state attorney a different version of events than what they told the police" and that the State "failed to notify the Defense in a timely manner of Ms. Gordon's suicide." (Appellant's Brief at 23). Canankamp argues that the State's failure to disclose that evidence amounts to a "*Brady* violation." (*Id.* at 24).

*Standard of Review*

**{¶67}** "'[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 338, quoting *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194 (1963). However, the United States Supreme Court later clarified, "'The rule of *Brady* * * * arguably applies in three quite different situations. Each involves the discovery, *after trial*, of information which had been known to the prosecution but unknown to the defense.'" (Emphasis added.) *State v. Wickline*, 50 Ohio St.3d 114, 116 (1990), quoting *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392 (1976).

*Analysis*

**{¶68}** As an initial matter, Canankamp's reliance on *Brady* is misplaced because *Brady* involves the discovery of evidence *after trial*. *Accord State v. Parsons*, 3d Dist. Henry No. 7-16-08, 2017-Ohio-1315, ¶ 77; *State v. Dahms*, 3d Dist. Seneca No. 13-16-16, 2017-Ohio-4221, ¶ 112. Based on the United States Supreme Court's clarification regarding the scope of *Brady*, the Supreme Court of Ohio concluded that "no Brady violation occurs when evidence is discovered and presented during the trial." *State v. Wilson*, 3d Dist. Union No. 14-13-04, 2013-Ohio-4643, ¶ 22, citing *Wickline* at 116. It is unequivocal that this evidence was

available to Canankamp at, or prior to the start of, trial. (*See* Appellant's Brief at 24). (*See also* Nov. 15-18, 2021 Tr., Vol. II, at 328-330, 333-341). Therefore, no *Brady* violation exists. *Accord Parsons* at ¶ 77; *Dahms* at ¶ 112. *See also State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, ¶ 82.

**{¶69}** Nonetheless, Canankamp argues that the trial court erred by denying her motion for a mistrial based on her contention that the State failed to disclose Gordon's and Osario's contradictory statements as well as Gordon's death prior to trial. Importantly, "[w]hen a defendant discovers that the State withheld potentially exculpatory evidence during the course of the trial proceedings, and not after, Crim.R. 16(L), and not *Brady*, governs." *Wilson* at ¶ 22. Crim.R. 16(L) provides, in relevant part:

> The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule * * *, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

Crim.R. 16(L)(1).

**{¶70}** "'The trial court has discretion to regulate discovery in a manner consistent with Crim.R. 16.'" *State v. Mobley*, 2d Dist. Montgomery No. 26858, 2016-Ohio-4579, ¶ 23. Thus, "we review a trial court's response to allegations of noncompliance with the criminal-discovery rules under an abuse-of-discretion

-36-

standard." *Dahms* at ¶ 114. As we previously stated, an abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *Adams*, 62 Ohio St.2d at 157-158.

**{¶71}** When determining whether to impose a discovery-rule sanction, "'[a] trial court must inquire into the circumstances surrounding a discovery rule violation and * * * must impose the least severe sanction that is consistent with the purpose of the rules of discovery.'" *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, syllabus, quoting *Lakewood v. Papadelis*, 32 Ohio St.3d 1 (1987), paragraph two of the syllabus. The Supreme Court of Ohio identified three factors that a trial court should consider when a discovery violation is alleged: "(1) whether the failure to disclose was a willful violation of Crim.R. 16; (2) whether foreknowledge of the undisclosed material would have benefitted the accused in the preparation of a defense; and (3) whether the accused was prejudiced." *Id.* at ¶ 35.

**{¶72}** In this case, the trial court inquired into the circumstances surrounding the alleged Crim.R. 16 violation. *Accord Dahms* at ¶ 116, citing *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 11("'[A] trial court must inquire into the circumstances producing [an] alleged violation of Crim.R. 16.'"), quoting *State v. Bellomy*, 9th Dist. Wayne No. 97CA0036, 1998 WL 161292, *2 (Apr. 8, 1998). Canankamp's trial counsel represented to the trial court that the State had "materially exculpatory evidence back sometime in August"—evidence from the

State's interviews of Gordon and Osario, respectively, in which they allegedly changed their statement from the statements they provided to law enforcement. (Nov. 15-18, 2021 Tr., Vol. II, at 333). In sum, Canankamp's trial counsel argued that the State's failure to divulge Gordon's and Osario's contradictory statements "severely handicapped" trial preparation since Osario's "credibility [was] undermined by her changing of the statements * * * ." (*Id.* at 334).

{¶73} In response, the State argued that no discovery violation occurred since Canankamp was (1) aware of Gordon's death prior to the start of trial; (2) aware that Osario was to testify; (3) apprised of the terms of Osario's negotiated-plea agreement in relation to this case; and (4) provided evidence prior to the start of trial revealing that Osario's prior statement was untrue. Most importantly, the State conveyed to the trial court that it had no obligation under Crim.R. 16 to disclose its trial preparation notes.

{¶74} Ultimately, Canankamp's trial counsel requested that the trial court grant her motion for a mistrial or, in the alternative, be permitted to "call everybody that was there present for the conversation including [the prosecutor], to testify as to what was actually said." (*Id.* at 337). The trial court disagreed and concluded that no Crim.R. 16-discovery violation occurred since "the Prosecutor's notes at a witness interview are not discoverable" and because the State disclosed Osario's negotiated-plea agreement to Canankamp. (*Id.* at 341).

**{¶75}** Based on our review of the record, we conclude that the trial court did not abuse its discretion by concluding that no Crim.R. 16-discovery violation occurred. Indeed, Crim.R. 16(J) exempts from discovery "[m]aterials subject to the work-product protection. Work product includes, but is not limited to, reports, memoranda, or other internal documents made by the prosecuting attorney * * * or their agents in connection with the investigation or prosecution * * * of the case." "[A] document prepared by a person other than the witness is not a witness statement unless 'explicitly adopted by the witness.'" *State v. Inman*, 4th Dist. Hocking No. 12CA16, 2013-Ohio-3351, ¶ 26, quoting Crim.R. 16(B)(6).

**{¶76}** Here, there is no evidence in the record that any statements from Gordon's or Osario's trial-preparation interviews were reduced to writing let alone adopted by Gordon or Osario. *Accord id.* at ¶ 27 (concluding that "discussion during [the witness's] trial preparation was not reduced to written form prepared, adopted, or signed by [the witness]"). At best, the discussions "may have been documented" in the prosecutor's notes, but those notes do not constitute a "written statement." *Id. See also id.* at ¶ 26 ("A writing or recording is only a statement for purposes of Crim.R. 16 if the witness prepared, signed, or adopted the statement; or if it is a substantially verbatim recital of the witness' statement written in a continuous, narrative form."). Rather, under the rule, a prosecutor's "notes made during witness preparation are work product expressly protected from disclosure." *Id. See also*

*State v. Henry*, 37 Ohio App.3d 3 (6th Dist.1987), paragraph three of the syllabus ("Notes taken by the prosecutor, which are not reviewed, adopted or signed by the witness, do not constitute discoverable 'statements' within the meaning of Crim.R. 16[J]").

**{¶77}** Nevertheless, the record reveals that the State complied with its obligation under Crim.R. 16(I) by disclosing Gordon and Osario (as well as their contact information) as potential witnesses well in advance of trial. *Accord Inman* at ¶ 27. Furthermore, it is undisputed that the State disclosed Gordon's and Osario's prior statements to law enforcement as well as evidence that the State intended to use at trial undermining those prior statements. *See id.* Armed with this information, Canankamp could have contacted Gordon or Osario and conducted her own pretrial interview. *Accord id.* at ¶ 29 (concluding that "[t]he defense could have contacted [the witness] and conducted its own pretrial interview" since "[t]he State provided [him] with [the witness's] name and contact information well in advance of trial").

**{¶78}** Moreover, there is no dispute that the State disclosed Osario's negotiated-plea agreement. *Accord United States v. Conteh*, 234 Fed.Appx. 374, 389 (6th Cir.2007) (concluding that "the Government disclosed plea agreements for its cooperating witnesses"). Nonetheless, Osario testified at trial that she received a negotiated-plea agreement in exchange for her "truthful testimony," and

Canankamp had the opportunity to cross-examine her. (Nov. 15-18, 2021 Tr., Vol. II, at 271). *See State v. Howard*, 1st Dist. Hamilton No. C-100240, 2011-Ohio-2862, ¶ 70. *See also Inman* at ¶ 31 (analyzing that "defense counsel challenged the credibility of [the witness's] identification by confronting him with the police statement in which he did not identify appellant"). Finally, there is no debate that Gordon's death was disclosed to Canankamp prior to the start of trial.

{¶79} Therefore, we conclude the trial court did not abuse its discretion by concluding that no Crim.R. 16-discovery violation occurred.

{¶80} Canankamp's fourth assignment of error is overruled.

{¶81} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER, P.J. and SHAW, J., concur.**

**/jlr**